[No. 18194. Department Two. May 5, 1924.]

G. A. YARNO, *Respondent*, v. HEDLUND BOX & LUMBER COMPANY, *Appellant*.[1]

APPEAL (151½)—PRESERVATION OF GROUNDS—EXCEPTIONS TO INSTRUCTIONS. Written exceptions to instructions are in time if filed with the clerk and called to the attention of the judge at or before the hearing of a motion for a new trial, as provided by Rem. Comp. Stat., § 339.

SAME (322)—RECORD—SUPPLEMENTAL CERTIFICATE—CURING DEFECTS. Where the record on appeal is silent as to whether exceptions to instructions were duly called to the attention of the court, the record may be amended by a supplemental certificate showing that this was done.

CONTRACTS (70)—CONSTRUCTION — EXTRINSIC CIRCUMSTANCES — TERMINATION OF CONTRACT. Where a logging contract is definite and unambiguous as to the rights of the parties, resort cannot be had to extrinsic circumstances to warrant its termination merely because heed was not given to unwarranted directions regarding performance.

LOGS AND LOGGING (3)—CONTRACT—CONSTRUCTION—TERMINATION FOR DISSATISFACTION. Where the duties of the parties to a logging contract are specifically set forth, and minimum annual deliveries and certain methods prescribed, a clause providing that it could be terminated if the owner should be dissatisfied with the progress made under the conditions set forth in the contract, does not authorize a termination unless the dissatisfaction is based upon some reasonable grounds; and refusal to follow directions as to the order in which the timber should be logged, not provided for in the contract, is not a substantial reason warranting termination.

[1]Reported in 225 Pac. 659; 227 Pac. 518.

SAME (3)—PERFORMANCE OF CONTRACT—TIME FOR DELIVERY. A logging contract specifying minimum deliveries within stated times, and requiring the work to be entered upon at once and prosecuted efficiently and continually, without prescribing how far one part of the work should proceed before making a delivery, does not require a continuous delivery but merely a delivery of the required quantities within the stated times.

DAMAGES (72, 74)—MEASURE OF DAMAGES—BREACH OF CONTRACT—INSTRUCTIONS. Upon an issue as to the damages for terminating a logging contract, where expert witnesses took into consideration and deducted from their final estimates the use of equipment and cost of superintendence during the unexpired time, it is proper to refuse instructions that would have authorized their deduction a second time.

SAME (73, 74)—BREACH OF CONTRACT—MEASURE OF DAMAGES—PRESENT VALUE OF PROFITS. In an action for damages for wrongful termination of a logging contract, the anticipated profits from the future payments due must be figured at their present value, allowing for the earning power of money payable at a future time, where the contract had some years to run and it was not claimed that performance could have been completed sooner.

TRIAL (107)—EXCEPTIONS TO INSTRUCTIONS—MODE OF MAKING. Under Rem. Comp. Stat., § 384, it is not necessary, in excepting to instructions, to state the reasons or grounds therefor, it being within the province of the court to call for them on his attention being called to the exception.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered May 5, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Hamblen & Gilbert* and *Post, Russell & Higgins,* for appellant.

*Ferris & Ferris* and *Graves, Kizer & Graves,* for respondent.

FULLERTON, J.—The appellant, Hedlund Box & Lumber Company, a corporation, owns and operates a sawmill, planing mill and box factory, located at the city of Spokane. Sometime prior to October 2, 1922, it

purchased from the United States, through its forestry service, all of the merchantable timber standing and growing upon certain described land forming a part of a government forest reservation situated in the state of Idaho. The timber consisted of various kinds, and amounted in quantity, according to the cruise of a member of the forestry service, to approximately fourteen million five hundred thousand feet, board measure, of which (approximately) one million feet was cedar. At the date above given, the appellant entered into a written contract with the respondent, Yarno, to log the timber. Yarno, in due time, began the logging operations, and proceeded therewith until January 17, 1923, when the company terminated the contract, compelled Yarno to vacate the premises, and took upon itself the logging operations. On February 20, 1923, Yarno began the present action to recover against the company as for a breach of the contract, and to recover in a second cause of action an unpaid balance of $200 alleged to be due on account of a sale of certain personal property to the company. After issue joined, a trial was had before the court sitting with a jury, and resulted in a verdict (returned April 25, 1923) in favor of Yarno in the sum of $22,310. From a judgment later entered on the verdict, the present appeal is prosecuted.

The contract entered into between the parties was somewhat minute in its details, and to an understanding of some of the questions presented by the appeal it is necessary to outline its provisions. By the terms of the contract, the respondent, called therein the logger, agreed to cut, skid, deck, chute, haul and deliver free on board freight cars of the Spokane International Railroad, at a station on the railway line of that company known as Meadow Creek, all of the merchantable

saw timber, "consisting only of Idaho White Pine, Douglas Fir and Larch, Spruce, White Fir and Hemlock species," standing and growing upon the tract of land described, which constituted all of the timber on the land except the cedar. The logger further agreed to cut the logs square on both ends; to cut and remove all defects in the timber, such as heavy butts, thick pitch, shake, rot, worm holes, burnt faces, and the like; to cut the white pine trees not more than sixteen inches above the ground, measured on the uphill side, and other trees not more than four and one-half feet above the ground, measured in a like manner; to cut the logs in specified lengths, the quantity to be cut into each length being designated by percentages of the whole, and to mark the length of each log on the small end. The logger further agreed to construct all the necessary camp buildings for housing his employees, and to construct them in the manner prescribed by the United States forestry service, and to keep the same sanitary according to the regulations of that service; to build all roads, chutes, skidways, landings, necessary for the successful performance of the work, and to do this, as well as construct the camps, at his own expense. He also agreed to furnish at his own expense, all tools, rigging and equipment necessary to perform the work contemplated by the contract, and it was provided that title to the buildings, chutes, skids and skidways, and other like structures, should be in the appellant company until the completion of the contract, when they should revert to the United States government.

The contract contained these further provisions, namely:

"(d) That he shall remove the timber clean as the work progresses and perform said work in a good and workmanlike manner to the full satisfaction of an

Agent of the Company, and or of the United States Forest Service. This means that the job is to be worked thoroughly and not merely have the 'Face' or front cut down and logged leaving the back timber untouched or in bad condition;

"(e)   That the sawing and felling of timber in advance of skidding or hauling out of the woods is to be supervised and regulated as to quantity by the company."

"Time of Performance: The logger agrees to enter upon the performance of this contract at once and to prosecute the same efficiently and continually, and in such manner as to complete the same on or before December 15, 1926. Unless such amounts of timber are reduced in writing by the U. S. District Forester at least 2,500 M' B. M. or its equivalent shall be cut and delivered prior to December 15, 1923; at least 6,000 M' B. M. or its equivalent shall be cut prior to December 15, 1924; at least 10,000 M' B. M. or its equivalent shall be cut and delivered prior to December 15, 1925; Time of performance is of the essence of this contract and in case the company is dissatisfied with the progress being made by the Logger under the conditions as set forth in this contract then the company shall at any time have the right, at the company's option, to either:

"(1)   Put additional men and teams on the job to speed up the work at the expense of the Logger; or else

"(2)   Terminate this contract and proceed itself through other employees or contractors with said work.

"In such event, at the termination of this contract on account of delay, the Logger agrees that he shall have no right to receive any consideration or credit for any improvements made or for any uncompleted work."

On the other side, the company agreed to pay the logger fourteen dollars per thousand feet, board measure, for all logs delivered on cars at the railroad station at the place before mentioned, and agreed to make the advancements necessary to be expended in the

preparation for the work, and to take care of the expense bills and the pay-rolls until the time of the first settlement provided in the contract.

The principal controversy between the parties arises from a difference in view as to the proper interpretation of the contract. To an understanding of these questions it is not necessary here to enter upon a special review of the evidence. There is a claim that the verdict is excessive, but as the evidence upon which this claim is founded relates to certain special matters, it can be best noticed further on in the discussion.

Passing to the legal questions involved, it is first necessary to notice a general objection made by the respondent to a consideration of the questions having their foundation in the instructions of the court. It is contended, first, that no proper exceptions were taken to the instructions; and second, that, conceding they were properly taken, they are not properly brought to this court in the record. The practice act of 1893, the material part of which pertaining to the question involved is found at § 384 of the code (Rem. Comp. Stat.) [P. C. § 7812], provided that exceptions to a charge to the jury, or a refusal to give as a part of such charge instructions requested in writing, may be taken by any party by stating to the court, "after the jury shall have retired to consider of their verdict, and, if practicable, before the verdict has been returned, that such party excepts to the same, specifying by numbers of paragraphs or otherwise the parts of the charge excepted to; . . whereupon the judge shall note the exceptions in the minutes of the trial, or cause the stenographer (if one is in attendance) so to note the same." Elsewhere in the same act it was provided that, for the purposes of an appeal, matters occurring at the trial and "not already a part of the

record in the cause,'' could be made a part of the
record by a bill of exceptions or a statement of facts
certified by the trial judge.

Under this act it was possibly the uniform practice
to take exceptions in accordance with the directions of
the cited section, and to include in a proposed bill of
exceptions or statement of facts the parts of the charge
of the court excepted to and the requests to charge
which the court refused, and cause the same to be cer-
tified as a part thereof.  At its session of 1909, how-
ever, the legislature made a material change in the
practice and proceedings on the trial of actions before
a jury in the superior court.  The details of these
changes need not be specifically pointed out, it being
sufficient for the purposes here to say it is therein pro-
vided that either party may, at any time before the
hearing of a motion for a new trial, except to the in-
structions of the court.  This change as to the time
when exceptions to instructions may be taken has
caused a change in the uniformity of manner of taking
such exceptions.  It is the practice in certain instances
to take exceptions in the manner and at the time pre-
scribed in § 384 above cited; in other instances, the
practice has been to await the return of the verdict,
and, if that be adverse, to move for a new trial and then
subsequently prepare and file with the clerk of the
court written exceptions to the instructions, specifying
the particular instructions excepted to and the grounds
on which the exceptions are based.  It was in this lat-
ter manner that the exceptions were taken in the pres-
ent instance, and it is urged that it is not a sufficient
compliance with the statutes.  The respondent cites
and relies upon the cases of *Gerber v. Aetna Indemnity
Co.,* 61 Wash. 184, 112 Pac. 272; *White v. Ratliff,* 61
Wash. 383, 112 Pac. 502; *State v. Peeples,* 71 Wash.

451, 129 Pac. 108; and *State v. Neis,* 74 Wash. 280, 133 Pac. 444.

It must be conceded that the language of some of these cases would lead to the conclusion that exceptions could not be taken in the manner in which they were taken in this instance, but it will be observed that in neither of the cited cases did the party taking the exceptions bring them to the attention of the trial court, and in some of them this fact is emphasized as the controlling factor. But whether these cases standing alone might justify excluding the consideration of the instructions, in the subsequent case of *Perine Machinery Co. v. Buck,* 90 Wash. 344, 156 Pac. 20, Ann. Cas. 1917C 341, exceptions were taken in the manner in which these were taken and were brought to the attention of the trial court before the hearing of the motion for a new trial, and on objection made in this court to their sufficiency, we held the procedure sufficient to bring them to this court for review. This latter case has not been subsequently overruled or disapproved, and the appellant had a right to rely upon it as an approved practice. After all, the manner of taking exceptions prescribed by the statute is rather directory than mandatory—the essential thing is that the exceptions and the grounds upon which they are founded be called to the attention of the court within the statutory time. In a number of subsequent cases the practice has been followed and recognized by us as sufficient, although perhaps the specific objection to their consideration was not made. The cited case also answers the second objection urged. We conclude, therefore, that the instructions are before us for consideration.

At the time the brief of the respondent was filed, it did not appear on the face of the record that the excep-

tions filed were called to the attention of the trial court prior to the hearing of the motion for a new trial, and this fact is urged therein as ground for objecting to their consideration. Since that time, however, the trial court has, by a supplemental certificate, certified that they were called to his attention at the proper time. This amendment of the record was within the power of the court, and is sufficient to correct any deficiency in the record in this respect. Rem. Comp. Stat., §§ 1729, 1731, 1752 [P. C. §§ 7305, 7316, 7336]. *Peabody v. Meacham,* 49 Wash. 381, 95 Pac. 322.

The first of the objections urged against the instructions of the court relates to the clause of the contract giving to the appellant the right to terminate the contract on becoming dissatisfied with the progress made by the respondent in the prosecution of the work of logging the timber. On this question the appellant requested the court to give to the jury the following instructions:

"Under the terms of the contract the company had the right to terminate the contract at any time it became dissatisfied with the progress being made by the logger under the conditions as set forth in the contract. I instruct you that this provision made the company the sole and exclusive judge of the progress being made by the plaintiff, and if you find from the preponderance of the evidence that the defendant was in good faith dissatisfied with the progress being made and that because of its dissatisfaction it in good faith terminated the contract with the plaintiff, then your verdict must be for the defendant on the first cause of action.

"Under the terms of the contract between the plaintiff and the defendant, the defendant had the unqualified option to terminate the contract in the event it was dissatisfied with the progress of the work or the manner in which the contract was being performed without

regard to whether or not the defendant had reasonable grounds for being dissatisfied.''

The court refused to give the requested instructions, and on the subject-matter of the request gave the following:

"This section [the section of the contract hereinbefore quoted relating to time of performance] makes time of performance of the essence of the contract and provides that in case the defendant should be dissatisfied with the progress made by the plaintiff under the conditions as set forth in this contract, that then the Company, at its option, might do one of two things, either put on additional men and teams to speed up the work at the expense of the logger (this the company does not claim it did and therefore you may disregard it), or, second, that it might terminate the contract and proceed itself, through other employes or contractors with the work. This was what the Company claims it undertook to do, and as to whether or not it was justified in terminating the contract under the provisions of this section, I will in the next instruction more fully explain to you.

"I charge you in respect to the clauses of the contract last above mentioned that before the Company could terminate on that ground it must in fact have been dissatisfied with the progress of the work. Its mere statement that it was dissatisfied is not sufficient. If, as a matter of fact, it was satisfied and was not dissatisfied, then it had no right to terminate the contract upon that ground. This is a question of fact which I submit to you and which you will determine in the light of all the testimony and evidence and circumstances of the case. I charge you, in the next place, that even though in fact it was dissatisfied, this of itself would not be sufficient to justify it in terminating the contract. Its dissatisfaction could not arise out of mere caprice and could not be arbitrary or unreasonable. If, as a matter of fact, at the time the defendant undertook to terminate this contract, the plaintiff was making reasonable progress in the work in accordance

with the conditions set forth in the contract, such prog-
ress as would satisfy a reasonable man conversant with
all the facts and circumstances and conditions sur-
rounding the work, then the defendant, as a matter of
law, was bound to be satisfied. As to the first year of
the work, the plaintiff was bound only to deliver
2,500,000 feet board measure, according to the scale
prior to December 15, 1923. I charge you that he had
the whole of that time in which to deliver that amount
of timber. Under the contract he was not obliged to
deliver any particular portion of it at any particular
time. However, if at the time the defendant gave the
notice of termination a reasonable man, acting fairly,
might reasonably have been dissatisfied with the prog-
ress the plaintiff was making towards the delivery of
timber, then the defendant would be justified in pro-
ceeding upon the ground it was dissatisfied. If, on the
contrary, a reasonably prudent man, acting fairly and
not arbitrarily or capriciously, would have been satis-
fied that the amount of timber to be delivered prior to
December 15, 1923, would have been delivered within
that time, then as to that part of the work the defend-
ant could not claim to be dissatisfied. You are to apply
the same rule in determining whether or not the de-
fendant could terminate this contract upon the ground
of dissatisfaction with progress of the work looking to
the deliveries of December 15, 1924, 1925, and 1926, if
any, respectively, and if upon all the evidence in the
case it appears that the progress plaintiff had made
up to the date the notice was given was such progress
as a reasonable man, working efficiently and continu-
ously under the conditions as they existed and with an
efficient and sufficient force, then and in that event
the defendant could not say it was dissatisfied and
terminate the contract. If, on the other hand, the
plaintiff failed in the progress of his work to come up
to the standard I have stated, then the defendant, if it
was in fact dissatisfied, as I have explained to you
before, would have a right to terminate the contract
because of its dissatisfaction with the progress of the
work.''

In support of its claim of error, the appellant first discusses at some length the evidence relating thereto. It argues that, from the very situation of the parties, the right to terminate the contract must rest in the discretion of the appellant; that it was the owner and operator of a sawmill plant; that it was necessary for the successful conduct of its business that it have a continuous and constant delivery of logs; that to secure this was the purpose of the contract, understood by both parties, and that it must of necessity be the judge whether there was a satisfactory compliance with these conditions. Looking at the contract from this point of view, it may be said that there was little in the evidence to justify the conclusion that the appellant acted harshly or unreasonably in terminating the contract. It undertook to direct the kind of timber that should be first cut and delivered, the order in which the various kinds of timber on the tract should be logged, and to regulate the deliveries thereof as to quantities, and it was only after the respondent had failed to comply with its directions in this respect that it terminated the contract. But we agree with the trial court that these were not proper matters for consideration in determining the meaning of the contract. A resort to extraneous circumstances for the purpose of interpreting a contract is only permissible in instances where the contract is in itself ambiguous or of doubtful meaning; it is not permissible where the contract is definite and certain in its terms. Here there was no ambiguity. On the contrary, the contract was definite and certain as to rights and duties of the parties thereto, and gave the appellant no right to dictate the manner of its performance. It could not say on what part of the ground the respondent should commence his operations, what timber should be first removed, nor

what quantities should be delivered at any given time, save as these were written in the contract. The situation of the appellant, its needs and desires, were, therefore, not alone sufficient to warrant it in terminating the contract merely because the respondent did not heed its directions with regard to performance.

The question then remains, did the appellant have this right under the terms of the contract without showing a reasonable cause for dissatisfaction. The courts generally have recognized two rules upon this question. In contracts involving personal taste—of which an agreement on the part of one party to paint a portrait of the other is a commonly cited example— the person to be satisfied may refuse to accept the tendered performance as performance, without showing a substantial reason on which to ground his dissatisfaction. So also it has been held that nothing more than dissatisfaction is sufficient to refuse to accept the tendered performance where the contract is without express conditions as to the manner in which the work is to be performed and the person refusing to accept acts fairly. But the foregoing rules are not favored in law, and the courts, with substantial unanimity, hold that, where the duties of the parties with respect to performance are specifically provided in the contract, dissatisfaction as a ground for its termination will not be recognized unless there is a substantial ground for dissatisfaction, and that this question is for the determination of the trier of the facts.

The appellant cites our cases of *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547, and *McDougall v. O'Connell,* 72 Wash. 349, 130 Pac. 362, 131 Pac. 204, and contends that they support the rule for which it contends in the present case. But an examination of the cases will show that the several contracts there under considera-

tion gave to the contracting party complaining the absolute and unqualified option to terminate the contract in case of dissatisfaction, and furnished no rule by which it could be determined whether there were reasonable grounds for dissatisfaction or not.

The more pertinent of our cases is that of *Gould v. McCormick,* 75 Wash. 61, 134 Pac. 676, Ann Cas. 1915A 710, 47 L. R. A. (N. S.) 765. In that case Gould and his partner, as architects, were employed by McCormick to draw plans and specifications for, and superintend the construction of, a nine-story building. After the plans were drawn and the work of construction partly completed, McCormick discharged the architects. The architects sued as for breach of the contract, and McCormick defended on a clause of the contract to the effect that the work of the architects was to be performed ''to his satisfaction'' and that it was not so performed. The architects recovered in the court below and the cause was affirmed on the appeal. In the opinion we noted the distinction in the governing rule with reference to dissatisfaction between instances where the contract itself prescribed the measure of performance, and the instances where the only measure was the satisfaction of the party, and, in concluding the argument upon the question, used this language:

''We think that the contract in the present case did not give to the appellants the arbitrary option to terminate it whenever they might be dissatisfied; but that it could only be terminated providing there was some reasonable basis for such dissatisfaction. Had it been the intention to give to the appellants the unqualified or arbitrary option to terminate the contract whenever they might be dissatisfied, it would seem that that portion of the contract which describes the character of the work and material would be entirely superfluous.

"The cases of *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547, and *McDougall v. O'Connell,* 72 Wash. 349, 130 Pac. 362, 131 Pac. 204, are not out of harmony with the views herein expressed; the distinction being that the contract which the court was construing in each of those cases gave the absolute or unqualified option to terminate in case of dissatisfaction; while in the present case the contract, considering all the language used, gives the right to terminate only when the dissatisfaction is based upon some reasonable ground."

The appellant further objects to that part of the quoted instructions wherein the court told the jury that the respondent was, by the terms of the contract, bound only to deliver two million five hundred thousand feet of logs, board measure, prior to December 15, 1923; that he had the whole of that time in which to make the delivery; and was not obligated to deliver any particular portion of it at any particular time. Attention is specially called to that part of the contract requiring the respondent to "enter upon the performance of this contract at once and prosecute the same efficiently and continually," and conclusion is drawn that this clause of the contract contemplates a continuous performance of the work of delivery as well as the continuous performance of any other part of the work. But we cannot think this a reasonable interpretation of the contract. Delivery was the last act the respondent was required to perform with reference to the logs, and was but a minor part of the entire work. Before they could be delivered they had to be made ready for delivery. In this instance, the trees from which they were to be taken grew upon a mountain side. These trees had to be felled, cut into prescribed lengths to form the logs, the logs had then to be carried to a chute, chuted down the mountain side to lower levels, and from thence carried to the place of delivery. The contract plainly

did not require that each of these several acts had to be carried on at the same time. From the nature of the work they could not be. Of necessity, one preceded another. The contract does not in terms prescribe how far the respondent might proceed with one part of the work before he took up another part. He was required to work efficiently and continually, but it was left to his judgment, save only in one particular not here in question, to determine how far he would proceed with one part of the work before he took up another. Time as to the complete accomplishment was the only limitation fixed. It was open to the appellant, of course, to contend that the respondent was not prosecuting the work efficiently and continuously, but on this question the trial court gave it the most ample latitude. It construed the contract to mean that the respondent was required only to deliver a given quantity of logs before a stated time, and in this we cannot conclude it erred.

On the measure of damages, the trial court gave the following instruction:

"In case you find for the plaintiff, he is entitled to recover as damages the difference between what it would have cost him to have performed his contract and the price the defendant agreed to pay him for performing it. If it would have cost him as much to perform it as he was to receive for the work, then of course he was not damaged by its breach, and the same would be true if it would have cost him more to perform the work than he was to receive. By the contract he was to receive $14.00 per 1,000 feet on board the cars of the Spokane & International at Meadow Creek. If he is entitled to recover, he is entitled to recover the difference between $14.00 per 1,000 and any less sum than $14.00 per 1,000 which it would have cost him to cut, skid, chute and deliver on board of cars all the timber covered by the contract upon the area covered by the contract. Now, in determining what that sum,

if any, is, you will take into consideration all the testimony in the case bearing upon the question, all the facts and circumstances brought out in evidence in the case, and apply that to determine what it would have cost the plaintiff to perform his contract, and if after so examining the testimony and evidence, you find from a preponderance of the evidence that plaintiff would have made a profit on the work, he is entitled to recover that profit in this case."

To this instruction the appellant excepted in the following language:

"Defendant excepts to that part of instruction No. 8 in which the court charges the jury as to the measure of damages to the effect that the plaintiff's damages would be the difference between what it would have cost him to have performed his contract and the price the defendant agreed to pay him for performing it, on the ground that said instruction does not state the correct measure of damages applicable to this case."

To an understanding of the specific nature of the objections to the instruction, some further statement is necessary. It will be remembered that, by the terms of the contract, the respondent was required to furnish at his own expense all tools, rigging, equipment and improvements necessary to complete the contract, and to finally complete it on or before December 15, 1926; that he was required to cut and deliver two million five hundred thousand feet of logs on or before December 15, 1923, an additional three million five hundred thousand feet on or before December 15, 1924, an additional four million feet on or before December 15, 1925, and the remainder, which measured by the estimate of the entire quantity amounted to three million five hundred thousand feet, on or before December 15, 1926. The contract was terminated by the appellant on January 17, 1923, some three years and eleven months before it would have expired by its expressed limitation. The

contract provided for settlements every six months, and it was at these several periods that the respondent was entitled to be paid for logs delivered, and were, of course, the times when he would receive the profits made on the contract.

The appellant's specific objections to the instruction are (1) that it did not take into consideration "and make allowance for the fact that his horses, tools and equipment would not or might not remain idle from the date of the termination of the contract" and the date fixed for its final completion; (2) that it did not take into consideration and make allowance for the fact that the respondent was "relieved from the care, costs, risk and responsibility of the contract;" and (3) that it did not take into consideration the fact that, by the rule as stated, the respondent could recover more than the present value of his contract—that is to say, the instruction allowed a present recovery of money that would only be due and payable at semi-annual periods extending over four years of time.

Waiving for the moment the question whether the exception as taken is sufficiently definite to warrant a review of the specific objections, we think the first two are without merit, as they were taken into consideration by the witnesses in estimating the profits the respondent would have made had he been permitted to complete his contract according to its terms. To prove his damages, the respondent called as experts experienced loggers who had looked over the ground, noted the character of the timber, the distances it was necessary to move the logs, and took their opinions based upon their previous experiences as to the cost. The nature of this testimony can be illustrated by giving the estimate of the respondent's first witness. He was a logger of long experience, who had himself logged

many similar tracts containing the same character of timber in quantity approximating the quantity of timber on this tract. Tabulating his estimates of costs, they were the following:

Building the necessary camp buildings, chutes, roads, skids, and other work preparatory to logging.....................$1.00 per thousand feet

Sawing; in which he included felling the trees and cutting them into sawlog lengths ............................... 1.25 per thousand feet

Skidding the logs; that is, hauling them from the place where they were felled to the chutes ............................. 3.00 per thousand feet

Chuting the logs; that is, running them down the chutes....................... 2.00 per thousand feet

Loading on carriers at the end of the chutes  .50 per thousand feet

Hauling from that to the place of delivery.. 2.00 per thousand feet

Loading on cars at the place of delivery.... .50 per thousand feet

Overhead; that is, miscellaneous costs and expenses that "had no name" such as delays in the work caused by inclement weather, breaking of the equipment, replacing loss of stock, broken tools and implements, and general supervision.... 1.00 per thousand feet

The witness further testified that it was on this basis that loggers generally made their preliminary estimate preparatory to entering into a contract for the removal of timber. He explained that the estimates would vary owing to the nature of the ground, the character of the timber, the distances the logs had to be moved, the time limit for their removal, and other circumstances; but that his experience had taught him that estimates in this manner gave a close approximation to the actual cost, and that he felt they were sufficiently liberal for the particular contract. Similar testimony was given by others of the respondent's witnesses, and it was by the same methods of calculation that the appellant's witnesses sought to show that the execution of the con-

tract at the prices named would prove a losing venture.

Plainly, we think, the witnesses took into consideration and deducted from their final estimates the use of the equipment the logger was required to furnish, and estimated and deducted also the cost of superintending. To have charged the jury, therefore, in accord with the appellant's theory would have authorized their deduction a second time.

It is the rule, of course, that compensation is the measure of the recovery; and it is the rule that a party cannot aggravate his damages by his own neglect, and that he must mitigate, as far as he reasonably may, his damages. But as we pointed out in the early case of *Watson v. Grays Harbor Brick Co.,* 3 Wash. 283, 28 Pac. 527, these rules have little application to a case of this character. In instances where a person is employed for a stated time at a given wage or salary and the contract is breached by the employer, the measure of damages is not always the difference between the wages or salary earned and paid and the sum he would have earned had the employee been permitted to complete his contract. The employee must make reasonable effort to obtain employment elsewhere, and the measure is the difference between what he did or could have earned by such efforts and the amount agreed to be paid. But in the form of contract now before us, the contractor is entitled to the benefit of his bargain, and to ascertain this, different methods must of necessity be employed. That measure is the difference between the price agreed to be paid for the work and the cost of performance, and it follows as of course that, when all of the items of the cost are considered, a correct determination is reached.

The third of the contentions, we think, is better founded. The contract, measured from the time of the

trial, had practically three years and six months yet to run. By its terms, settlements were to be made every six months, and it was only at such settlements that the respondent could have received the profits earned in the prosecution of the contract. There was no evidence or claim that the contract would have been completed sooner than the time limit therein fixed, and, as we have before noticed, the profits were estimated with the view that no more than the minimum number of logs required to be delivered in any one year would be so delivered. It is plain, therefore, that the rule for the measure of damages given by the court to the jury allows a present recovery of money payable at a future time, without any allowance or consideration for the earning power of the money. The rule is general, we think, that in computing the damages recoverable for the deprivation of future payments or pecuniary benefits to be furnished in the future, the principle of limiting the recovery to compensation requires that the allowance be made upon the basis of their present value only. To quote from *Chesapeake & Ohio R. v. Kelly,* 241 U. S. 485:

"That where future payments are to be anticipated and capitalized in a verdict the plaintiff is entitled to no more than their present worth, is commonly recognized in the state courts. We cite some of the cases, but without intending to approve any of the particular formulae that have been followed in applying the principle; since in this respect the decisions are not harmonious, and some of them may be subject to question. *Louis. & Nash. R. R. v. Trammell,* 93 Alabama, 350, 355; *McAdory v. Louis. & Nash. R. R.,* 94 Alabama, 272, 276; *Central R. R. v. Rouse,* 77 Georgia, 393, 408; *Atlanta & W. P. R. R. Co. v. Newton,* 85 Georgia, 517, 528; *Kinney v. Folkerts,* 78 Michigan, 687, 701; 84 Michigan, 616, 624; *Hackney v. Del. & Atl. Tel. Co.,* 69 N. J. Law, 335, 337; *Gregory v. N. Y., Lake Erie & West. R. R.,* 55 Hun (N. Y.), 303, 308; *Benton*

*v. Railroad,* 122 N. Car. 1007, 1009; *Poe v. Railroad,* 141 N. Car. 525, 528; *Johnson v. Railroad,* 163 N. Car. 431, 452; *Goodhart v. Pennsylvania R. R.,* 177 Pa. St. 1, 17; *Irwin v. Pennsylvania R. R.,* 226 Pa. St. 156; *Reitler v. Pennsylvania R. R.,* 238 Pa. St. 1, 7; *McCabe v. Narragansett Lighting Co.,* 26 R. I. 427, 435; *Houston & T. C. R. R. v. Willie,* 53 Texas, 318, 328; *Rudiger v. Chicago &c. R. R.,* 101 Wisconsin, 292, 303; *Secord v. John Schroeder Co.,* 160 Wisconsin, 1, 7. See, also, *St. Louis, I. M. & S. Ry. v. Needham* (C. C. A. 8th), 52 Fed. Rep. 371, 377; *Balt. & Ohio R. R. v. Henthorne* (C. C. A. 6th), 73 Fed. Rep. 634, 641.''

We have not overlooked the citations made from our own cases which are thought to maintain a contrary view. Without referring to them specifically, it can be said that in none of them was the precise question presented. They are either cases where the action was instituted after the end of the time of performance, or where no question was made other than that the rule worked substantial justice. In the present instance, it is clear that it does not, since the witnesses on whose testimony the verdict is founded did not take it into consideration in framing their estimates of the damages suffered by the appellant.

The respondent, however, contends that the exceptions taken by the appellant to the instruction are not sufficient to warrant a review by this court of errors assigned thereon. He argues that the errors complained of are errors of nondirection and not errors of misdirection, and that the remedy for this is not by an exception merely, but that his remedy was to tender a more complete instruction, one that would have informed the court of the particular objection, and except to a refusal to give it, did the court so refuse. But it is our opinion that the instruction was rather misdirection than nondirection. The court undertook to give the jury a mathematical formula for deter-

mining the amount of the damages, and, as he omitted one of the factors of the formula, it cannot be said to be mere nondirection. For misdirection it is sufficient to preserve the question to merely except to the instruction. Since, under the practice, all exceptions must be called to the attention of the trial judge, it is within his province, if he is doubtful as to the precise nature of the objection, to call upon counsel for a more complete statement. No doubt the trial judge availed himself of all of his privileges in this instance; at least, there is no room for the claim that he was in any way misled by the indefinite nature of the exception. Our case of *Reed v. Tacoma R. & P. Co.,* 117 Wash. 547, 201 Pac. 783, is pertinent. In that case the specific objections to the instructions were not pointed out in the exceptions as taken. It was urged that they were insufficient, but we held otherwise, using this language:

"We have not overlooked the argument of the respondent to the effect that the exceptions taken by the appellant to the instructions which we have discussed were insufficient. Its argument is that the exceptions taken do not specifically point out the error alleged to be contained in the instruction. As to the first instructions discussed by us, the exception was as follows: 'The plaintiff excepts to the instruction given by the court to the jury as follows—,' and then quotes the instruction. Exception taken to the second instruction discussed by us was substantially the same as above. We have no doubt that these exceptions were amply sufficient. Section 384, Rem. Code (P. C. § 7812), provides that exceptions to a charge to the jury may be taken by 'specifying by numbers of paragraphs or otherwise the parts of the charge excepted to . . .' It will be observed that the statute only requires the exception to point out the particular instruction or part of instruction which it is claimed is erroneous; it does not require that the reasons or grounds for the exception be given."

We then reviewed a number of our prior decisions, pointing out that they had not been entirely consistent, and concluded with the following statement:

"We desire to announce the rule that, under the statute, it is not necessary that the exceptions shall state wherein the instruction is wrong."

The claim that the verdict is excessive, apart from the consideration last noticed, is based upon the contention that the actual expenses incurred by the respondent, in so far as he had proceeded with the work, show that his contract was a losing venture. An elaborate table has been submitted upon the one side to demonstrate the contention, and an equally elaborate one upon the other to refute it. A detailed discussion would require more space than we feel should be given to it. Generally, it can be said that the figures given furnish no very accurate criterion for determining what the ultimate cost of the work might be. The respondent was stopped before he had hardly started upon the work; in so far as .he had performed, he had operated in the winter season when all costs would be at their peak; his working apparatus, particularly the chute, where the cost had most largely exceeded the estimate, had not then been adjusted so as to permit the work to go smoothly; and other things were shown to have interfered with the work, particularly the excessive depth of snow. Manifestly, as the operatory machinery became adjusted and the weather moderated the costs would decrease, and operation over a longer period of time covering the changing seasons was necessary before actual cost of operation would show whether there would or would not be a profit. It is to be remembered that the case is not before us for a retrial upon the facts. We must find that there is no evidence, or inference from evidence, sup-

porting the jury's verdict, before we are warranted to interfere. The verdict as returned is, in our opinion, well within the evidence, and so concluding, our inquiry necessarily ends.

Because of the error above noted, there must be a modification of the judgment, and it remains to inquire whether it can be so modified without a new trial of the entire issues. It seems to us that it can. The verdict of the jury as returned has reduced it to a mere mathematical problem. From the verdict as returned, the rate of profit per thousand feet which the jury found the respondent would have made can be ascertained. The respondent was required to deliver a given quantity by December 15th of each of the years over which the contract extended, and the amount which would have been earned at the end of each of these periods can be ascertained by multiplying the quantity by the rate. From these quotients the present worth of money can be ascertained by another equally certain mathematical formula. There is, of course, an uncertain element in the contract—certain enough had the respondent been permitted to perform, but uncertain when it is sought to capitalize the earnings in advance of performance—arising from the fact that settlements were to be made at semi-annual rather than at annual periods. Had the work been actually performed, the quantity of logs delivered at each settlement period would have been known, but as the quantity to be delivered was fixed only at the end of annual periods, nothing short of prescience can now make known the quantity that would have been delivered at the intermediate periods; that is to say, the periods of settlement at which no fixed quantity of logs was required to be delivered. For the want of certainty in this respect, the annual periods must be adopted. The

proposition being thus reduced to a mathematical calculation, the court is more competent to make the calculation than is the jury. Indeed, the computation would be impossible for the ordinary juryman without the aid of formulae or tables, and had the question been submitted to the jury, it would have been necessary to reduce the amount to a certainty by some form of competent evidence. We see no reason, therefore, why the amount may not as well be determined subsequent to the return of the verdict as well as in advance of it. It involves no disputed question of fact. The rate of interest to be used as one of the factors of the problem is a legal question and must have been determined by the court and stated in his instructions to the jury, and nothing is left but the mathematical calculation.

The judgment is reversed, and the cause remanded with instructions to ascertain the worth of the recovery at the time of the return of the verdict, in accordance with the directions above given, and enter a judgment for the reduced amount. The appellant will recover its costs of appeal.

MAIN, C. J., MITCHELL, and BRIDGES, JJ., concur.

PEMBERTON, J., concurs in the result.

ON REHEARING.

[Department Two.    July 15, 1924.]

PER CURIAM.—With reference to the disposition to be made of the above entitled cause, the parties have filed the following stipulation:

"It is stipulated between counsel for the respective parties that the contention made by appellant in its petition for a rehearing, to the effect that the trial court should be directed, in making its computation, to assume that $2,500 of the moneys due respondent

on December 15, 1923, would not be payable until December 15, 1926, be conceded, and that this court may modify its opinion heretofore filed herein by directing the trial court to treat the fixed sum of $2,500, provided by the contract to be withheld by the appellant, as coming due on December 15, 1926, and not as coming due on December 15, 1923."

The order directed to be made in the opinion heretofore filed will be modified to conform to the stipulation.