[No. 3377-43021-1.    Division One.    December 8, 1975.]

WILLARD W. JONES, as *Administrator*, ET AL, *Respondents*, v. HOWARD HOLLINGSWORTH, ET AL, *Appellants*.

*Lycette, Diamond & Sylvester, Josef Diamond*, and *Simon Wampold*, for appellants.

*Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll*, for respondents.

JAMES, J.—The single issue raised in this appeal presents a "hornbook" question of elementary contract law. What is the legal effect of a "condition" which is an event within the control of a party who seeks to avoid the contract?

The parties to the contract are the heirs of Claude Hollingsworth, deceased. Proponent, Howard Hollingsworth, is the named executor of Claude Hollingsworth's purported last will. Contestants, J. Y. Hollingsworth, Max Hollingsworth, Fred Hollingsworth, and Elaine Bollam are Howard's siblings who have contested both the will and an inter vivos transaction between Howard and the deceased. The inter vivos transaction and the will combined to substantially disinherit the contestants and to make Howard the principal beneficiary of his father's estate. Contestants petitioned to have the will "revoked and annulled." Pending a

hearing on the petition, the probate judge removed Howard as executor and appointed Willard Jones as special administrator. Jones is a nominal party to this appeal.

The contract in question is a stipulation by which the contestants expressed their "desire . . . to compromise, settle and forever put at rest all issues" among them. In summary, it provides that the inter vivos transaction was valid, that the will is invalid and that, after payment of expenses of administration, attorneys' fees, estate taxes and Howard's income taxes, the remainder of the estate "shall be divided among Proponent [Howard] and Contestants [intervenors], giving a one-fifth share to each."

Critical to the dispositive issue are the following provisions of the stipulation:

The Internal Revenue Service is asserting additional estate tax liability against the Estate of Claude Hollingsworth upon the premise that the intervivos [*sic*] transfers were invalid and that the property was an asset of the estate at the time of death and is also asserting income tax liability against Defendants covering a period of several years and arising primarily from gains realized by Proponent from sales of the same property. The parties expect to be able to compromise, settle and make provision for the payment of any and all tax liability of the estate and of the Defendants in amount and manner acceptable to the parties to this Stipulation but such determination and provision for payment of any and all such tax liability lies at the threshhold [*sic*] of any settlement of issues among the parties to this Stipulation and is a condition precedent to the consummation of any compromise and settlement of the issues among the parties hereto.

. . .

RELEASE FROM STIPULATION:

In the event the parties are unable to arrange with the Internal Revenue Service a determination of the estate tax liability of the Estate of Claude Hollingsworth and the income tax liability of Defendants and make provision for payment thereof in amount and manner acceptable to the parties to this Stipulation within ninety (90) days from the date of this Stipulation or within such additional time as the parties hereto stipulate in writing

filed with the above entitled Court as a supplement to this Stipulation, this Stipulation shall be without any legal effect whatsoever, all parties shall be excused from performance hereunder, and no party hereto shall be prejudiced in anywise for having entered into this Stipulation.

Plaintiff's exhibit No. 1. By a subsequent stipulation, it was agreed that the time "for the determination of the estate tax liability of the estate and the income tax liability of the defendants, with satisfactory provision for payment thereof, hereby is extended for an indefinite period and shall continue until terminated by order of the above-entitled court." Plaintiff's exhibit No. 2.

Negotiations to settle the tax matters with the IRS were undertaken by an accountant employed by the special administrator. The accountant negotiated a settlement of the tax liabilities which was acceptable to the intervenors but Howard refused to accept the proposed settlement of his individual tax liability. After an "in chambers" hearing, the judge who was handling the probate ordered Howard to sign the personal income tax forms and, upon his refusal to do so, "put him in jail for a week" for contempt of court. Howard was not represented by counsel at the time.

Thereafter, Howard's present counsel petitioned for an order declaring the stipulation to be "void and of no effect" and to set the will contest for trial on the merits. Howard first asserts that the stipulation never became operative or effective because it was not signed by his wife. His second contention is that the stipulation is wholly executory because, by its express terms, his "acceptance" of the tax liability settlement is a condition precedent to his performance.

The trial judge rejected both of Howard's contentions and concluded that "[t]he stipulation is a binding agreement for settlement of the above-entitled causes and for the administration and distribution of the property covered by the stipulation in the manner therein provided." Conclusion of law No. 6.

We do not agree.

Our review of the findings of fact, conclusions of law and memorandum opinion appended thereto reveals that, although not expressly articulated, the trial judge reasoned that the above-quoted provisions for a "release from stipulation" should be construed to be a "conditional promise" rather than a true "condition precedent." His conclusion that Howard was bound by the terms of the settlement agreement was based upon his finding that the proposed compromise with the IRS was "the best" that could be hoped for and that, in refusing to accept it, Howard "acted in bad faith, for the sole purpose of undoing what he had previously done by signing the stipulation and supplemental stipulation." Finding of fact No. 14. Howard's position is that the proposed compromise was not the "best" for him. He asks for a trial on the merits.

The record brought to us does not include any trial briefs or counsels' argument at trial. However, in his memorandum opinion, the trial judge cites only *Yarno v. Hedlund Box & Lumber Co.*, 129 Wash. 457, 225 P. 659, 227 P. 518 (1924) in support of the statement that: "In contracts where the duties of the parties with respect to *performance* are specifically provided in the contract, dissatisfaction as a ground for his termination will not be recognized unless there is a substantial ground for dissatisfaction." (Italics ours.)

*Yarno* is clearly distinguishable. The contract there involved was for the logging of timber owned by Hedlund. Yarno was to be paid for his performance on a stumpage basis. The contract required Yarno to construct "roads, chutes, skidways, landings, necessary for the successful *performance* of the work, and to do this, as well as construct the camps, at his own expense." (Italics ours.) *Yarno v. Hedlund Box & Lumber Co., supra* at 460. The contract provided that time was of the essence and if Hedlund became "dissatisfied" with the progress "being made" by Yarno, it could terminate the contract. After Yarno had been on the job for some 2½ months, Hedlund "terminated the contract, compelled Yarno to vacate the premises, and

took upon itself the logging operations." *Yarno v. Hedlund Box & Lumber Co., supra* at 459. Yarno recovered a money judgment for damages. The rationale of *Yarno* is that

> where the duties of the parties with respect to *performance* are specifically provided in the contract, dissatisfaction as a ground for its termination will not be recognized unless there is a substantial ground for dissatisfaction, and that this question is for the determination of the trier of the facts.

(Italics ours.) *Yarno v. Hedlund Box & Lumber Co., supra* at 469.

Distinguishing true "conditions precedent" from "conditional promises" is a judicial function which has not always been clearly articulated. The problem is most difficult when, as here, the conditional "event" (acceptance of the tax settlement) was within the control of the "promisor" (Howard) who seeks to avoid the settlement agreement. Courts have usually been reluctant to permit the avoidance of a contract by enforcing a "condition" where a promisor has received the benefit of a promisee's *performance,* and "[w]here it is doubtful whether words create a 'promise' or an 'express condition,' they are interpreted as creating a 'promise.' Restatement, Contracts § 261, p. 375; 5 Williston, Contracts (3d ed.) § 665, p. 133." *Ross v. Harding,* 64 Wn.2d 231, 236, 391 P.2d 526 (1964). *Accord, Gould v. McCormick,* 75 Wash. 61, 134 P. 676 (1913).

But the rewriting of contracts to achieve a desired result is not a proper judicial function.

> A party to a contract may make any term, no matter how immaterial or unimportant it may be, a condition precedent to his duty of performance by stating that it shall be such. Until the condition is fulfilled, strictly and literally, the promisor cannot be in breach of his promise;
> . . .

L. Simpson, *Contracts* § 151 (2d ed. 1965).

> But whether reasonable or not a promisor may impose such conditions as he chooses upon his promise, and courts should not lightly disregard the terms upon which the parties to a contract have agreed. See *O'Reilly v.*

Guardian Mut. Life Ins. Co., 60 N. Y. 169, 19 Am. Rep. 151; Whiteside v. North Am. Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696; Williston, Contracts, § 675; Kerr, Insurance, 451.

*Consolidated Indem. & Ins. Co. v. Alliance Cas. Co.*, 68 F.2d 21, 22 (2d Cir. 1933).

Whether a provision in a contract is a condition, the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances. 5 Williston, Contracts (3d ed.) § 663, p. 127.

*Ross v. Harding, supra* at 236. *Accord, Koller v. Flerchinger*, 73 Wn.2d 857, 441 P.2d 126 (1968).

■ Where the intent of the parties is clearly expressed, courts may not "construe" their contract.

We often have said that the courts will not interpret the meaning of unambiguous contracts.

*Schwieger v. Harry W. Robbins & Co.*, 48 Wn.2d 22, 24, 290 P.2d 984 (1955).

The basic rule in the construction of contracts is that the intention of the parties to the agreement must control. *Jacobs v. Teachout*, 126 Wash. 569, 219 Pac. 38.

Consequently, when the intent of the parties is clearly evident, as it is in this case, courts have nothing to construe and must be governed by the intention of the parties as expressed in the written instrument. *Thomle v. Soundview Pulp* Co., 181 Wash. 1, 42 P. (2d) 19.

*Silen v. Silen*, 44 Wn.2d 884, 890, 271 P.2d 674 (1954). This fundamental rule was early enunciated by the United States Supreme Court in *Hale v. Finch*, 104 U.S. 261, 270, 26 L. Ed. 732 (1881), where Justice Harlan wrote that unless precise and unambiguous words of an agreement which created a condition were given effect, "then every condition in a deed or other instrument, however bald that instrument might be of language implying an agreement, could be turned, by mere construction and against the apparent intention of the parties, into a covenant involving personal responsibility." And in *Yarno*, it is also recognized

540

that a contract may give a party the "absolute and unqualified option to terminate . . . in case of dissatisfaction, . . ." *Yarno v. Hedlund Box & Lumber Co., supra* at 470. *Accord, Tatum v. Geist,* 46 Wash. 226, 89 P. 547 (1907); *McDougall v. O'Connell,* 72 Wash. 349, 130 P. 362, 131 P. 204 (1913).

■ Here neither party's promise (to settle the will contest) was conditioned upon the "acceptable" *performance* of the other party. Neither party received the benefit of the other's performance. Here the parties *expressly* agreed that an event other than the other party's *performance* was a *condition precedent* to settlement of the will contest. That event was a compromise of the IRS tax claim against both Howard and the estate "in amount and manner acceptable to [each of] the parties." As in *Ross v. Harding, supra* at 237, "[i]t would be difficult to choose words to more precisely express an intention to create a condition precedent than those used in the contract here to be construed."

We hold that the express terms of the stipulation gave Howard the absolute right to reject the proposed tax compromise and when he exercised that right, the stipulation was by its terms "without any legal effect whatsoever." Justice for both parties will best be served by a trial on the merits.

Reversed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied February 26, 1976.

Review granted by Supreme Court April 23, 1976.