**CREIGHTON v. BROWN et al.**

No. 998.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 4, 1950.

Decided Dec. 20, 1950.

Richard H. Love, Washington, D. C., for appellant.

Stuart H. Robeson, Washington, D. C., with whom Charles Iverson, Washington, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The principal question on this appeal is the validity of an alleged oral condition precedent to a written contract under seal for the sale of personal property. The trial court held the condition precedent valid and in consequence awarded judgment to plaintiffs who had relied on the condition to nullify the contract. Defendant appeals.

Plaintiffs sold a piano to defendant on a conditional sales contract for a total price

of $675, payable $50 in cash and the balance in monthly installments. Later a fire occurred in defendant's house which seriously damaged the piano. Defendant then ceased making monthly payments and called upon plaintiffs to see what could be done to repair it. After discussion defendant returned the damaged piano to plaintiffs on the understanding that plaintiffs would see whether the repairs could be made by the manufacturer and at what cost. Plaintiffs received an estimate from the manufacturer, and the parties thereupon entered into a new conditional sales contract in writing for the sale of the same piano for a sum arrived at by totaling the balance due on the first contract plus the estimated cost of repair and cartage. The contracts were signed by both parties. Above the signature of defendant there appeared the phrase "Witness my hand and seal at Washington, D. C." and opposite such signature there was the printed word "(Seal)".

What turned out to be the crucial point of the case was alleged to have occurred before and after the signing of the second contract. Plaintiffs, over objection, introduced evidence of conversations with defendant to the effect that there was an oral condition precedent to the performance of the second contract in that it would become effective "if the piano can be repaired by the manufacturer." Defendant testified that he understood that the piano was to be returned to the manufacturer for repair, but that there was no question as to whether or not it could be repaired.

Correspondence between plaintiffs and the manufacturer was also received in evidence. In a letter sent to the manufacturer prior to the signing of the second contract plaintiffs inquired the cost of putting a new case on the piano, provided they forwarded the plate, strings, action, etc. Plaintiffs added that the piano had been badly scorched in a fire "and presumably has only case damage." The manufacturer replied that "if the strung back and the keys and actions which you are able to send us are readily usable, we believe our cost will be

$201.00 to put on a case, regulate and tune the piano. If, however, the action or the strings or some other parts have to be replaced this of course will have to increase our cost." Thereupon the second contract was signed, increasing the cost by $201.00 plus interest and cost of cartage.

After receipt of the piano, the manufacturer wrote plaintiffs saying it had been inspected by the appropriate officials and adding: "They find that only the aluminum plate may be salvageable, and even this they would hesitate to recommend using as the plate is heat-tempered at Alcoa and they cannot definitely say that it would stand the tension of a set of strings. Water has gotten into the action and strings thereby making these unusable. The back is also water-soaked and charred. In view of the above, the cost for repairs would be rather close to if not as much as the purchase price of a new instrument." Based upon this information, plaintiffs informed defendant that the piano could not be repaired by the manufacturer and claimed a balance arrived at by deducting from the original cost of the piano all payments already made by defendant.

The position of plaintiffs is that the second contract was nullified by the condition precedent which could not be performed. Defendant claims that the contracts being under seal the terms could not be contradicted by an oral condition precedent; and also that even if the oral testimony of the condition was properly received such condition never became operative because no proof was offered that the piano could not be repaired by the manufacturer—only that it might cost more than contemplated by plaintiffs.

Conditions precedent are well recognized in the law. They have been defined as facts which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.[1] As was said in Lippincott v. Kerr, 1930, 59 App. D.C. 290, 291, 40 F.2d 802, 803: "It is well settled in this district 'that the execution and delivery of a written instrument, in

---

1. Restatement, Contracts, § 250(a).

form complete, may be made upon the condition that it shall not become binding until some condition precedent, resting in parol, shall have been performed.' Donaldson v. Uhlfelder, 21 App.D.C. 489, 493."[2]

Defendant stresses, however, that this contract was under seal and urges that the general rule just mentioned is not applicable when sealed instruments are involved. He relies most heavily upon Newman v. Baker, 1897, 10 App.D.C. 187 and Bieber v. Gans, 1905, 24 App.D.C. 517. In both of these cases it was held that where a written instrument under seal is complete on its face and unambiguous and contains an unconditional promise to pay the sum sued for upon the happening of a certain event, and that event has admittedly occurred, a recovery can not be defeated by showing a collateral oral agreement between the parties that the promise was to be conditional only.

Although there is a conflict in other jurisdictions, there is no question that a contract signed and sealed as was the present one is treated here as a sealed instrument. Wells v. Alropa Corporation, 1936, 65 App.D.C. 281, 82 F.2d 887.

We would appear to be bound by Newman v. Baker, supra, and Bieber v. Gans, supra, couched as those decisions are in such general language regarding sealed instruments. But we are not persuaded that they are applicable to the present case. Newman v. Baker, supra, involved an agreement to convey land. Bieber v. Gans, supra, was a suit on a bond given in payment for land. Code 1940, § 45—106, provides that no estate of inheritance, or for life, or for a longer term than one year, in any real property, in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and *sealed* by the grantor, lessor, or declarant or by will. On the other hand contracts for the sale of personal property are not required to be under seal, even where, under the statute of frauds, such contracts must be in writing.

Thus this contract was not required to be under seal. Seals have lost much of their efficacy. Many states have abolished their use. Courts are more and more refusing, except when absolutely necessary, to give them effect. They are a relic of the common law and yet England, where the common law originated, as shown below, has, in this respect, today changed the rule. To make the present case turn on the fact that the buyer signed his name on a line on which the word seal had already been printed in a transaction having to do with personal property seems to us to be an anachronism nor do we think the rule of stare decisis requires it.

This view is well supported elsewhere. In Blewitt v. Boorum, 142 N.Y. 357, 37 N.E. 119, referred to in Newman v. Baker, supra, the court held that the rule regarding oral conditions precedent and sealed instruments is not applicable to an instrument not affecting real estate, either deeds conveying real estate or an interest therein, or agreements for the sale thereof, and which does not require a seal for its validity.

Even in the cases of real property, the old rule is no longer followed in Virginia. In an absorbing and logical opinion, Whitaker v. Lane, 1920, 128 Va. 317, 104 S.E. 252, 255, 11 A.L.R. 1157, the court reviewed the entire history of sealed instruments and conditions precedent and concluded by giving effect to an oral condition precedent accompanying a delivery to the vendor of a sealed contract for the purchase of real estate. Quoting 4 Wigmore, Evidence § 2408, as to the effect of the delivery of a sealed instrument to the grantee, the court said: "'A conditional delivery in escrow to the grantee, however, has come down to us traditionally, as a complete act, the condition being deemed vain. But this is an arbitrary distinction; no reason and no policy justifies it. In England the old rule, as handed down in Coke's Treatises, has, for more than two generations, been repudiated.'"

2. See also Bosworth v. Cady, 7 Cir., 1934, 72 F.2d 62.

■ The Virginia court discussed in detail English cases which support Wigmore's statement and also cited in support of its view principles announced by the Supreme Court on various occasions as well as such authorities as Tiffany on Real Property and Williston on Contracts.

The following extract from the court's opinion, 104 S.E. at page 255, states a view which meets our entire approval and which has been expressed in different language by the Supreme Court and the United States Court of Appeals in this jurisdiction: " * * * and while great consideration should be given to precedent, especially to one of long duration and general acceptance, it cannot be that a rule merely established by precedent is infallible. This would stay all progress and forbid all development. If the rule established by precedent is highly technical, and finds its origin in reasons which no longer exist, and the courts have from time to time found it necessary to make exceptions thereto to meet the needs and methods of doing business in modern times, it would seem that the courts should adapt their procedure to the age in which we live, and cease to follow a precedent for which they have always to apologize, and declare that it is highly technical and not justified either by reason or policy."

In the annotation to the above opinion, 11 A.L.R. 1174, it is stated: "It is a view generally accepted that the rule which excludes parol evidence to modify a written contract does not—at least, as regards contracts not under seal—prevent its introduction to show that a written instrument was delivered on condition. 10 R.C.L. p. 1054, § 250. The opinion in the reported case contains an exhaustive discussion of the admissibility of parol evidence to show that a sealed instrument was delivered subject to condition. The conclusion reached therein, that such evidence is admissible, is in accord with the growing tendency in modern times to minimize the importance of a seal, and to apply to sealed contracts the same rule as that applied to unsealed contracts."

■ We conclude that the evidence of the oral condition precedent was properly admitted and that the second contract was not to take effect until and unless the condition was fulfilled, that is to say, until the manufacturer had determined the repairability of the piano.

■ Defendant contends, however, that even if this rule is adopted in the present case there was insufficient evidence to excuse performance. The point was proved to the satisfaction of the trial court, and we think there was ample evidence to support the finding. True, the manufacturer did not say in so many words that the piano could not be repaired, but it did describe factors which from a practical standpoint amounted to the same thing. It said the action of the piano and its strings were unusable and that the back of the piano was water-soaked and charred. It also said that it would not recommend using the aluminum plate—the only part which "may be salvageable"—because it was doubtful whether it would stand the tension of a set of strings. Of course, the piano could have been completely rebuilt, but we believe that the trial court was entitled to conclude that the repair of the piano was contemplated, not its rebuilding. .

We have considered the case from every aspect and have concluded that the judgment of the trial court was correct and should be

Affirmed.