[No. 36704. Department One. April 16, 1964.]

THOMAS B. ROSS *et al., Plaintiffs,* v. CHARLOTTE M. HARDING, *Appellant,* MAX E. LIEB *et al., Respondents.**

*Reported in 391 P. (2d) 526.

*Willis C. Oldfield,* for appellant.
*Binns & Petrich,* for respondents.

JAMES, J.†—The appellant and the respondents undertook the accomplishment of what must have seemed to them an uncomplicated business transaction. Involved was the sale of an almost extinct species of American free enterprise—a Mom and Pop grocery store. Unhappily, they now find that their efforts have brought them into court in a difficult and complex field of law. Their "legal rights" must be determined by a consideration of the law of contracts and specifically by the application of "interpretive rules which are extremely subtle and artificial." 12 Am. Jur. § 295, p. 848.[1]

On October 21, 1958, appellant, Charlotte M. Harding, and her then living husband, entered into a conditional sale contract for the purchase of the grocery store from plaintiffs, Thomas B. Ross and Mildred H. Ross, his wife. Appellant and her husband gave plaintiffs a real-estate mortgage to

---

†Judge James is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1]"The 'legal operation' of a contract, after it is made, can not be determined by reading the contract (assuming it to be in writing), or by interpreting the language used by the contractors, or by what is often referred to as 'construction.' It can not be determined by finding, in some occult manner, the supposed 'intention of the parties.' Such terms as these may serve a useful purpose; but they also cause obfuscation and always involve a supposition of clarity and certainty that is very largely false.

"In order to determine the 'legal operation' of a contract, it is necessary to know what the courts will do in all the possible contingencies of performance or non-performance. Sometimes these contingencies are foreseen and provided for by the parties in making their agreement. In more instances, however, the contingencies that actually later occur are not foreseen by the parties, or at least are not provided for in any way by them. Yet, in such cases the courts have to determine the rights and wrongs of the matter, the remedies to be awarded, what the parties ought to have done and ought not to have done. This is what is meant by the 'legal operation' of the contract. These are the 'legal relations' that are created by the contract and the subsequent events." 3A Corbin, Contracts § 622, p. 2.

secure performance of the conditional sale contract. On the same day, appellant and her husband signed, as lessees, an instrument signed, as lessor, by one Henry A. Keil, as administrator of the estate of Anna E. Pentland, deceased, covering "That certain store building and living quarters situate at No. 4221 East 11th Street, Tacoma, Washington." These were the premises in which the grocery store was established. The term provided in the instrument was 5 years with an option to lessees for an additional 5-year period. These premises, which were more fully described in the "lease" by metes and bounds, were also identified by the same street address in the conditional sale contract and were referred to therein as "Toddhaven Grocery."

Appellant's husband died in August of 1959.

The transaction between appellant (individually and as administratrix of her deceased husband's estate) and respondents is encompassed in three instruments:

(1) Earnest Money Agreement and Sale of Personal Property, dated October 6, 1959. This document contains the following language of significance here:

"It is specifically understood and agreed that this offer is made subject to the written consent of the lessor of the said building to the assignment and/or renewal of the existing lease."

(2) Assignment of Conditional Sales Contract, dated October 9, 1959. This document contains the following language of significance here:

"Also all interest in a certain lease dated October 21, 1958 made by Henry A. Keil as Administrator."

(3) A paper which, in its entirety, is as follows:

"Tacoma, Washington
October 10, 1959

"I, Henry A. Keil, executor for the business known as Toddhaven Grocery, located at 4221 East 11th Street, Tacoma, Washington, give consent to Mrs. Mercedes Harding to underlet these premises to Mr. and Mrs. Max Lieb under the same conditions as in her present lease.

"Henry A. Keil
4114 Marine View Dr."

Pursuant to instrument No. 1, the respondents paid appellant $1,500 in cash. By the terms of the agreement, respondents assumed an unpaid balance on the conditional sale contract of $7,044.37 payable in monthly installments of $100, which included interest on deferred balances at 6 per cent per annum.

Respondents went into possession as directed by appellant's attorney, made monthly payments on the conditional sale contract to a bank for plaintiffs' account and monthly rental payments of $100 to Henry A. Keil. After April of 1960, respondents ceased making payments on either the contract or for rent, and, in May, abandoned the premises. The fixtures were left on the premises and the stock, which had been inventoried at less than $40 at the time of the sale to respondents, was entirely depleted.

Plaintiffs commenced this action for specific performance and joined both appellant and respondents as defendants. Plaintiffs sought judgment against both for the unpaid balance on the conditional sale contract and a decree of foreclosure of the real-estate mortgage executed by appellant and her husband. In appellant's answer and cross-complaint, her alternative prayer was for dismissal of the action against her or for judgment over against respondents in the event of judgment against her.

The trial court entered judgment for the plaintiffs against the appellant for the balance due on the conditional sale contract and decreed a foreclosure of the real-estate mortgage. Both the plaintiffs' complaint and appellant's cross-complaint against respondents were dismissed.

Appellant's assignments of error all relate to the trial court's conclusion that the respondents never became legally bound to perform because of the failure of appellant to fulfill a "condition precedent" which was a material part of the contract of sale.

The trial court's finding of fact No. 5 is as follows:

"Said 'Earnest Money Agreement and Sale of Personal Property' provides as follows:

" 'It is specifically understood and agreed that this offer is made subject to the written consent of the lessor of the

said building to the assignment and/or renewal of the existing lease.'

"The building referred to was the building in which the business of the Todd Haven Store was conducted. The 'existing lease' referred to is in evidence herein. It was executed by Henry A. Keil 'as Administrator of the Estate of Anna E. Pentland, Deceased,' on October 21st, 1956. Said Henry A. Keil was discharged as Administrator of said Estate on July 29, 1957. Title to said building was at all times pertinent to this action vested in Esther A. Marbut, Myrtle A. Keil and Evelyn E. Stein, as their separate property in equal undivided shares. Said purported lease was for a term of five years from November 1, 1958, renewable at Lessees' option for an additional term of five years, and was not assignable, nor was underletting or occupancy by any person permitted, without the written consent of lessor. No consent of any person was ever obtained to the assignment and/or renewal of said lease or any lease of said property to Defendants Lieb or either of them. That Henry A. Keil did execute a written consent to subletting by Mercedes Harding to Mr. and Mrs. Max Lieb. That except as to the above lease there was no evidence of fraud or misrepresentation by anyone. HBS."

The trial court entered the following conclusions of law:

No. 7:

"The purported lease of the Todd Haven Store premises was made without authority, and was null and void from its inception. Defendant Harding by implication represented to Defendant Max E. Lieb that it was a valid lease and expressly represented that it was an 'existing lease'. Said representation was a material, substantive term and condition of the 'Earnest Money Agreement and Sale of Personal Property.' The leasehold, if valid, would have constituted a valuable estate."

No. 8:

"The language concerning the lease which is quoted in Finding of Fact V embodies a material condition precedent which has not been complied with."

There is no evidence to controvert the trial court's finding of fact No. 5. Neither is there any explanation whatever for the puzzling performance of Mr. Keil. Neither he nor any one of the owners of the real property which he pur-

ported to lease was called as a witness. Nor was any explanation tendered concerning their nonappearance.

Appellant's argument, when considered in its entirety, poses three questions, all referable to the provision in the sale agreement calling for a written consent to assignment or renewal of the "existing lease."

The first question to be determined is whether or not the provision in question constitutes a "promise" or a "condition precedent."[2]

A "condition" whether it be "precedent" or "subsequent" may be either express, implied in fact, or constructive. 5 Williston, Contracts (3d ed.) § 668, p. 152; 3A Corbin, Contracts §§ 631, 632, pp. 21, 22.

"Conditions precedent" are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available. 3A Corbin, Contracts § 628, p. 16; *Partlow v. Mathews,* 43 Wn. (2d) 398, 261 P. (2d) 394. A breach of a "promise" subjects the promisor to liability in damages, but does not necessarily excuse performance on the other side. Nonperformance or nonoccurrence of a "condition" prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability. 5 Williston, Contracts (3d ed.) § 665, p. 132. Where it is doubtful whether words create a "promise" or an "express condition," they are interpreted as creating a "promise." Restatement, Contracts § 261, p. 375; 5 Williston, Contracts (3d ed.) § 665, p. 133.

Whether a provision in a contract is a condition, the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances. 5 Williston, Contracts (3d ed.) § 663, p. 127.

---

[2]For a comprehensive review of the Washington cases dealing with "conditions" see Contracts in Washington, 1937-1957: Part III, Professor Warren L. Shattuck, 34 Wash. L. Rev. 467.

Any words which express, when properly interpreted, the idea that the performance of a promise is dependent on some other event will create a condition. Phrases and words such as "on condition," "provided that," "so that," "when," "while," "after," or "as soon as" are often used. 12 Am. Jur. § 295, p. 849; 5 Williston, Contracts (3d ed.) § 671, p. 161.

It would be difficult to choose words to more precisely express an intention to create a condition precedent than those used in the contract here to be construed.

"It is specifically understood and agreed that this offer is made *subject* to the written consent . . ." (Italics ours.)

 This language leaves no room for interpretation. As stated in *Schwieger v. Harry W. Robbins & Co.*, 48 Wn. (2d) 22, 24, 290 P. (2d) 984:

"The release is in plain and unambiguous language. We often have said that the courts will not interpret the meaning of unambiguous contracts. *Silen v. Silen*, 44 Wn. (2d) 884, 271 P. (2d) 674 (1954). . . ."

The sale of a grocery business was also involved in the case of *Brier v. Orenberg*, 90 A. (2d) 832 (D. C. Mun. App. 1952). The contract there provided that it was "contingent in its entirety" upon the procuring of a valid assignment of the lease on the premises from the landlord. The court there held:

". . . This, quite clearly, made the securing of the lease assignment a condition precedent: a fact which must exist or occur before a duty of immediate performance of a promise could arise. Creighton v. Brown, D. C. Mun. App., 77 A. 2d 559; Restatement, Contracts, § 250 (1932)."

We hold that the procuring of the written consent of the lessor to the assignment or renewal of a valid lease of the premises occupied by the grocery store was a condition precedent to the appellant's right to specific performance against the respondents.

The second question then is: Was the condition precedent fulfilled by the written consent to underlet procured from

Henry A. Keil? In asserting that the answer to this question should be in the affirmative, appellant seems to argue that the true owners of the real estate involved are in some way estopped from repudiating the purported lease and the purported consent to assignment thereof by Keil. In her brief, appellant stated:

" . . . The three sisters, true owners of the property, saw him clothed with apparent authority to make the lease, sat by for over a year and a half, were charged with knowledge that the property was rented, and presumably received the benefits of the agreement which their agent had made under a continuation of his former agency as executor."

This astonishing assertion is unsupported by even a scintilla of evidence. The numerous cases cited by appellant applying the principles of estoppel to factual situations involving landlord and tenant, probate and agency are not apposite to the facts (or rather the absence of facts) in this case.

▮ Equitable estoppel or estoppel in pais in its simplest terms means estoppel by conduct. Here the only evidence of conduct concerns that of the alleged agent. As to the principals, the true owners, the record is silent.

" . . . Equitable estoppel or estoppel in pais is the principal by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." 19 Am. Jur. § 34, p. 634; *Carruthers v. Whitney*, 56 Wash. 327, 105 Pac. 831.

This leaves the third question: Did respondents waive their right to require performance of the condition precedent or are they estopped from denying the validity of the lease because of the part performance on their part? Appellant argues in her brief as follows:

"Did the furnishing of a lease, the greatest objection to which is that it was at most voidable, constitute such a partial failure of consideration that went to the root of the contract? The respondents got all they contracted for—the store, the equipment, the stock, and peaceful possession of the property as long as they wanted possession, without any indication that their tenancy would be terminated. The relations between Keil and respondent Lieb, as testified to by him, certainly justify the inference that, had Lieb at any time objected to the voidability of the lease, a lease signed by the three sisters could be obtained.

" . . .

"Appellant had a valid lease covering the store building. Respondent set up an affirmative defense alleging the lease was void. He did nothing to prove this defense against appellant's establishment of the lease, except to show that legal title to the property was not then in the executor. He had the burden of proof, and failed to establish that the lease was unauthorized. And having stepped into appellant's shoes as lessee, he is estopped to deny the validity of the lease."

This argument proceeds from a false major premise. Here there was no lease at all. Title to the property was not in the estate of Anna E. Pentland, deceased. The true owners of the property neither signed the purported lease nor authorized Henry A. Keil to execute the lease in their behalf.

The contract was prepared by appellant's counsel. The language used in the critical provision calling for the lessor's "written consent" to the assignment of "the existing lease" is plain and unambiguous. It can mean nothing other than that there is an existing *valid* lease.

The trial court expressly found that "except as to the above lease there was no evidence of fraud or misrepresentation by anyone." This does not amount to a finding that there were fraudulent misrepresentations concerning the existence of a lease. But, absent fraud, the undenied misrepresentation would at least necessarily have to be characterized as a mutual mistake of fact. Where there is a clear bona fide mutual mistake regarding material facts, equity will grant a rescission. *Stahl v. Schwartz,* 67 Wash.

25, 120 Pac. 856; *Lindeberg v. Murray,* 117 Wash. 483, 201 Pac. 759; *Sutton v. Peterson,* 193 Wash. 175, 74 P. (2d) 884.

That such an equitable principle has long been a part of the common law is demonstrated by the opinion in *Allen v. Hammond,* 36 U. S. 63, 71 (11 Peters 63), 9 L. Ed. 633 (1837), in language appropriate to the facts of this case:

"In 1 Fonbl. Eq. 114, it is laid down, that where there is an error in the thing for which an individual bargains, by the general rules of contracting, the contract is null, as in such a case, the parties are supposed not to give their assent. And the same doctrine is laid down in Puffendorff's Law of Nature and Nations, b.1, c.3, § 12. The law on this subject is clearly stated, in the case of *Hitchcock v. Giddings,* Daniel's Exch. 1 (s.c. 4 Price 135); where it is said, that a vendor is bound to know that he actually has that which he professes to sell. . . ."

The mistake of fact must, however, be as to a fact which is material. 12 Am. Jur. § 126, p. 618. It has been said that the true test as to materiality is whether the contract would have been entered into had there been no mistake. *Lindeberg v. Murray, supra.* As was said in *Lindeberg,* we are clear that there was such a mistake here. That a valid lease with approximately 3 years to run plus a 5-year renewal option is a material and substantial part of the consideration for the agreement to purchase the grocery business is self-evident.

■ The term "waiver" when used in connection with the required performance of a condition is usually defined as "the voluntary and intentional relinquishment of a known right." 5 Williston, Contracts § 678, p. 239. There is no evidence whatever that respondents had any knowledge that there was, in fact, no valid lease, until after this action was begun and respondents, for the first time, had legal counsel.

■ Appellant argues that respondents had the burden of establishing that the lease was void. The rule of law is to the contrary. Proof of performance of an express condition precedent is a burden which must be met by the party who seeks enforcement of the contract.

" . . . A plaintiff, in order to maintain an action on

a contract, must have complied with the conditions precedent contained therein. That is to say, a breach by a plaintiff of a material condition precedent relieves a defendant of liability under a contract. 2 Restatement, Contracts, 746, § 395; 3 Williston, Contracts, 1936, § 674; 6 Corbin, Contracts, 2, § 1252." *Atkinson v. Thrift Super Markets, Inc.,* 56 Wn. (2d) 593, 594, 354 P. (2d) 709.

In the case at bar, the appellant, if she was to prevail, had the burden of proof—proof that she had met the express conditions precedent—the written consent to an assignment of a valid lease. She did not sustain her burden. The trial court correctly dismissed her cross-complaint against respondents.

The judgment is affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

\*Reported in 391 P. (2d) 199.