[No. 37392. Department Two. April 22, 1965.]

MULTI-PRODUCTS ENGINEERING CO., INC., *Appellant*, v. BELLINGHAM STEEL PRODUCTS, INC., *Respondent*.*

*David E. Rhea*, for appellant.

*Devin, Hutchinson & Rolfe* (*McDannell Brown*, of counsel), for respondent.

BARNETT, J.†—This is an action upon an express contract, partly written and partly oral, between the parties for the development of a wrapping machine. The plaintiff (appellant) alleges that, at the request of defendant (respondent), plaintiff delivered to defendant materials and services of a reasonable value of $108,692.90, and it now seeks that amount and interest until paid. The defendant's answer was a general denial and two affirmative defenses. One defense is the failure of plaintiff to deliver machines to the defendant to be sold in accordance with an agreement. The second is that the plaintiff corporation, before the commencement of the action, sold and delivered all unfinished machines, parts, supplies and all its rights in the machine to another party, thereby making it impossible for the plaintiff to perform its agreement. (Defendant's exhibit No. 13.)

In the confusion of dealings and transactions between the

*Reported in 401 P.2d 329.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to art. 4, § 2(a) (amendment 38), state constitution.

parties, the following is not disputed. One Lester Ingram had designed a package-wrapping device. Peter Manson, a salesman of allied supplies and Multi-Products Engineering Co., Inc., possessed facilities for manufacturing the machine. On April 28, 1954, these parties entered into a written agreement by which Ingram agreed to devote 3 days a week assisting Multi-Products to develop the machine and Multi-Products agreed "to furnish the cost of materials and such labor as is necessary in the construction of said package-wrapping machine for Ingram, Manson and Multi-Products." The agreement further provided that, when the machine was in workable order, Multi-Products would account to Ingram and Manson for the total cost of the machine (labor to be based on shop time and materials at cost plus 10 per cent). The parties to the document also expressed their intention to form a corporation with Ingram, Manson, and Harry Schafer, then the president of Multi-Products, sharing equally therein.

On August 12, 1955, Manson, Ingram, Schafer, and Richard Olney, who, with Schafer, owned all the capital stock of Multi-Products, executed a further written agreement by which they agreed to form a corporation to be known as Bellingham Steel Products, Inc. The purpose of the new company was to manufacture and sell the package-wrapping machines. Paragraph 5 of the Preliminary Agreement to Incorporate reads:

It is agreed that upon its formation Bellingham Steel Products, Inc., will contract with Multi-Products, Inc., to manufacture said machines for a five-year period. Multi-Products will charge machine time at the regular rates fixed in the Bellingham, Washington area plus 10% above material costs.

The basic agreement was that Multi-Products would make and Bellingham Steel would sell the machines. The development costs were to be paid off from the proceeds of a loan from the Small Business Administration and the sale of the machines.

The defendant corporation was formed as planned. After the expiration of nearly 5 years, during which time addi-

tional development work was done by the plaintiff company, no wrapping machine had then (nor up until the commencement of this action) been manufactured and delivered to the defendant company for sale or for any other purpose, although defendant's president, Peter Manson, arranged for the sale of one machine to Scott's Market and part of the proceeds was credited to the account of Bellingham Steel.

Plaintiff gave monthly billings to defendant for the development costs. As indicated by the corporation minutes of the meeting of defendant company directors on November 21, 1956, defendant recognized its liability for such development costs which at that time were stated to be about $60,-000. A resolution was passed at that meeting authorizing the company officers to apply the proceeds of the sale of the first 10 machines to the account with Multi-Products. Before the commencement of the suit, the plaintiff sold everything connected with the rights to, and the manufacture of, the wrapping machine to a third party.

The Superior Court of Whatcom County found that the plaintiff had not performed its part of the contract and that it had placed itself in the position where it was unable to do so. The court entered a judgment for the defendant dismissing plaintiff's complaint and denied plaintiff's motion for a new trial. From this disposition of the case, the plaintiff has perfected this appeal.

The several assignments of error can be condensed to two arguments by the appellant. The first is that the appellant did perform its part of the agreement; and second, that since performance has already been rendered, there is no question as to impossibility of performance.

In accordance with Rule on Appeal 43, RCW vol. 0, we need only review that which is assigned as error by appellant.

There is a basic disagreement between the parties as to whether the appellant performed its part of the bargain. Appellant contends that it fulfilled its duty by "the final construction of the machine in workable order; followed by

an accounting for the costs thereof." Appellant also urges that the sale of its rights to a third party did not preclude its performance of the contract since performance had already been accomplished. We are told that the respondent acquiesced in the sale and so is estopped from asserting it. It was also suggested for the first time on oral argument, that the sale was a novation. The respondent corporation was not a party to the Preliminary Agreement nor to the Preliminary Agreement to Incorporate. However, the persons executing these instruments were officers, directors, and, to some extent, stockholders in both companies. They were well acquainted with the situation from the point of view of both appellant and respondent corporations. They knew that respondent corporation had no resource except from the proceeds of sale of machines with which to pay development costs. The two written instruments of intent and the conduct of the parties as evidenced by their admissions in court lead to the conclusion that respondent's liability arose only upon the delivery of machines to it and that the proceeds of sales constitute the sole resource for the payment of development costs.

Multi-Products' complaint did not allege the existence of an express contract nor the performance of conditions precedent to respondent's liability. However, the matter was put in issue by Bellingham Steel's amended answer. The case was argued on the theory of an express contract by counsel for both sides.

We agree with the trial judge that the payment to appellant for development costs by the respondent was to come from the proceeds of the sale of the completed machines. The record shows that no machines were delivered up until the time the action was commenced.

We have stated that both sides have treated this case as being one of express contract between the parties. We stated in *Atkinson v. Thrift Super Markets*, 56 Wn.2d 593, 594, 354 P.2d 709:

A plaintiff, in order to maintain an action on a contract, must have complied with the conditions precedent con-

tained therein. That is to say, a breach by a plaintiff of a material condition precedent relieves a defendant of liability under a contract.

We recently stated in *Ross v. Harding*, 64 Wn.2d 231, 240, 391 P.2d 526:

> Proof of performance of an express condition precedent is a burden which must be met by the party who seeks enforcement of the contract.

See, also, Restatement, Contracts § 395, p. 746; 3 Williston, Contracts § 674, p. 1936 (Rev. ed.); 6 Corbin, Contracts § 1252, p. 2.

The appellant, by its failure to perform a condition precedent to the respondent's duty to pay, *i.e.*, delivery of completed machines to the respondent for sale, is precluded from maintaining this action against the respondent for breach of contract.

Having thus decided, it is unnecessary at this time to discuss the issue of impossibility of performance or assignments of error relating thereto.

This decision is without prejudice to the rights, if any, of the appellant in defendant's exhibit No. 13 relating to the sale hereinbefore referred to.

The judgment is affirmed.

WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.