**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NEWPORT YACHT CLUB, a Washington nonprofit corporation, individually and on behalf of its members, | No. 10-35389 |
| Plaintiff, | D.C. No. 2:09-cv-00589-RSL |
| and | |
| WILLIAM S. WEINSTEIN and LEANNE C. WEINSTEIN, and their marital community, | MEMORANDUM[*] |
| Plaintiffs - Appellants, | |
| v. | |
| CITY OF BELLEVUE, a Washington municipal corporation, | |
| Defendant - Appellee. | |

| | |
|---|---|
| NEWPORT YACHT CLUB, a Washington nonprofit corporation, individually and on behalf of its members, | No. 10-35403 |
| | D.C. No. 2:09-cv-00589-RSL |
| Plaintiff - Appellant, | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

and

WILLIAM S. WEINSTEIN and LEANNE C. WEINSTEIN, and their marital community,

           Plaintiffs,

  v.

CITY OF BELLEVUE, a Washington municipal corporation,

           Defendant - Appellee.

Appeals from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Chief District Judge, Presiding

Argued and Submitted April 11, 2011
Seattle, Washington

Before: KLEINFELD, TASHIMA, and SILVERMAN, Circuit Judges.

Plaintiffs-Appellants William and Leanne Weinstein and the Newport Yacht Club appeal the district court's grant of summary judgment in favor of the City of Bellevue. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I.    Source Control Budget Cap

Paragraph 4.5 of the Settlement Agreement caps the City's expenditures for source control projects at $3,075,000—the amount listed on Exhibit C. Paragraph 3.1 requires King County to pay $2,150,000, minus a credit for work in the Cinder Mine area, to the City for the County's portion of the costs for the Coal Creek Stabilization Project. "Portion" means "a part of a whole." *Webster's Third New International Dictionary* 1768 (2002). The County's payment to the City represented its share of the costs listed on Exhibit C, not some amount in addition to those listed costs. Extrinsic evidence cannot be relied upon to read a non-existent term into the Agreement, such as a provision placing the risk of cost overruns on the City. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005).

Under the only reasonable interpretation of the budget cap provision, the City was required to spend a maximum of $3,075,000, *inclusive* of the County's payment, on source control projects. Because the Weinsteins and NYC do not dispute that the City has spent this much, we affirm the grant of summary judgment in favor of the City on this claim.

## II.     Sediment Capture Capacity

The Agreement obligates the City to increase sediment capture capacity by 1,500 cubic yards. Under Paragraph 4.3.1, this obligation is contingent upon

receipt of all required permits and third-party approvals. The receipt of permits is a condition precedent to the City's obligation to increase capture capacity. *See Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964). At the time the Weinsteins and NYC filed this lawsuit, the City had not yet obtained the necessary permits; therefore, the City's obligation to build the sediment capture pond had not yet arisen, and it could not be in breach. *See id.* (defining "condition precedent" as "a fact which must exist or occur before a duty of immediate performance of a promise could arise"). Moreover, the Weinsteins and NYC fail to make any showing that the City's pursuit of permits for an in-channel sediment capture pond, as opposed to an off-channel pond, was not in good faith. We affirm the district court's grant of summary judgment in favor of the City on this claim.

## III. Salmon Habitat Enhancement Project

The Agreement allows the Weinsteins to construct a "salmon habitat enhancement project" on their property. Under Paragraph 7.2, the City may not oppose the Weinsteins' development of such a project, provided the project complies with the Bellevue City Code. The City must also "cooperate with Weinstein in securing" any necessary city permits for the project.

The phrase "salmon habitat enhancement project" is not defined by the Settlement Agreement. Relying on a dictionary definition of "habitat," the district

court concluded that the phrase refers to a project that "improve[s] the *place* where salmon is ordinarily found." But "habitat" is also defined as "the kind of site or region with respect to physical features (as soil, weather, elevation) naturally or normally preferred by a biological species." *Webster's Third New International Dictionary* 1017 (2002). The phrase "salmon habitat enhancement project" is subject to more than one reasonable meaning, and the mutual intent of the parties remains a question of fact to be determined at trial. *See Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996). We reverse the grant of summary judgment in favor of the City on this claim, and remand for further proceedings.

## IV. Flood Control Berm

The Agreement obligates the Weinsteins to build a flood control berm along the south bank of Coal Creek. Under Paragraph 6.3, the obligation to construct the berm is "contingent upon receipt of all third party permits and approvals for the Berm and Salmon Channel." The Weinsteins received all necessary permits for the berm and the salmon channel, but they have not yet built the berm. They are in breach of this provision of the Agreement. Their argument that they are entitled to defer construction of the berm until they receive permits for a salmon habitat enhancement project fails because the clear language of Paragraph 6.3 conditions

their obligation only upon receipt of permits for the berm and the salmon channel, not upon receipt of permits for a salmon habitat enhancement project.  We affirm the district court's grant of summary judgment on the City's counterclaim against the Weinsteins.

Each party shall bear its own costs on appeal.

AFFIRMED in part; REVERSED in part and REMANDED.