# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERENCE TRAVERSO,<br><br>　　　　　　Appellant,<br><br>　　　v.<br><br>SANDRA SNYDER, VICKI LAZOR, and<br>TEACHERS CHILDCARE CENTER,<br>INC., a Washington corporation,<br><br>　　　　　　Respondents. | DIVISION ONE<br><br>No. 83033-3-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Terence Traverso appeals from the trial court's orders granting summary judgment to Sandra Snyder and Vicki Lazor (the Sellers), denying his motion for summary judgment, and awarding the Sellers attorney fees and costs. Traverso asserts that the trial court erred by granting the Sellers' motion because genuine issues of material fact exist as to whether the Sellers breached the business opportunity purchase and sale agreement (BOPSA) by terminating the BOPSA and refusing to sell him the real property and the day care business operating thereon. Additionally, Traverso asserts that the trial court erred in awarding the Sellers attorney fees and costs. Because Traverso fails to establish an entitlement to relief on any of his claims, we affirm.

I

In 1997, the Sellers decided to expand their day care business and purchased a property located at 26047 116th Avenue SE, Kent, Washington.

The Sellers established the day care operation and the underlying real property as a new legal entity, Teachers Childcare Center, Inc. (Teachers Childcare).

In 2018, the Sellers decided to sell Teachers Childcare and the real property. Robert Carper, a real estate broker, assisted the Sellers with the transaction.

On April 18, 2019, Traverso, an attorney, through his real estate broker, Steve Thompson, offered to purchase Teachers Childcare and the property for $1,200,000, with $50,000 in earnest money, and a 60-day closing date of June 20, 2019.

The next day, Traverso and the Sellers executed the BOPSA. The BOPSA contained a feasibility condition and a financing condition. The feasibility condition provided:

> Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction in Buyer's sole discretion, concerning all aspects of the Business, including physical and financial condition; the presence of or absence of any hazardous substances on the real property; the contracts and leases affecting the Business; the potential financial performance of the Business; the availability of government permits and approvals; and the feasibility of the Business for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within [30 days] of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility contingency stated in this Section shall be deemed to be satisfied.

The financing condition provided:

> Buyer's obligations under the Agreement are contingent on Buyer obtaining new financing. Buyer shall submit a complete written application for financing for the Property within five (5) business days after waiver or satisfaction of the Feasibility Period in Section 5 of the Agreement, pay required costs and make a good faith effort to procure such financing. Buyer shall not reject those terms of a

2

commitment which provide for a loan amount of at least $ _____ or 80% of the purchase price, interest not to exceed 5% per annum, a payment schedule calling for monthly payments amortized over not less than 15 years, and total placement fees and points of not more than 3% of the loan amount. The Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives notice that this condition is satisfied or waived on or before _____days (60 days, if not completed) following mutual acceptance of the Agreement.

Soon after executing the BOPSA, Traverso submitted a loan application to Celtic Bank for a small business association (SBA) loan. The bank informed Traverso that he must secure all necessary licenses to operate the business before the bank would underwrite his SBA loan. The Washington State Department of Children, Youth, and Families (Department) told Traverso that the Sellers' current day care license was not transferable and that he must obtain a new day care license in order to operate the business.

In May 2019, Traverso asked the Sellers for more time to obtain the day care license and close the sale. Traverso and the Sellers executed an addendum that extended the feasibility period to June 19, 2019, with closing to occur "within 60 days of waiver of feasibility by buyer." About a month later, Traverso again asked the Sellers for more time to obtain the day care license and close the sale. Traverso and the Sellers again executed an addendum, this time extending the feasibility period to July 5, 2019 and closing to August 15, 2019. The addendum also noted that the "[s]ale is subject to buyer obtaining all necessary licenses to run [the] business." On July 19, 2019, the bank conditionally approved Traverso's SBA loan, subject to Traverso actually obtaining the day care license.

Soon thereafter, Traverso again requested additional time to obtain the day care license and close the sale. Traverso and the Sellers executed two more addenda: the first extended the financing period to July 31, 2019; the second gave Traverso until August 23, 2019 to close the sale.

On August 20, 2019, Traverso informed the Sellers that his lender had appraised the real property at $1,020,000 and the business at $49,000. Traverso told the Sellers that if they agreed to reduce the purchase price to $1,000,000, he would provide them with an all-expense paid trip to Hawaii. Traverso and the Sellers eventually executed two additional addenda reflecting a reduced purchase price of $1,025,000, details regarding the trip to Hawaii, and a new closing date of September 23, 2019.

In September, Traverso again requested additional time to obtain the day care license and close the sale. On September 24, 2019, the parties agreed to an addendum that provided, "Financing contingency extended to coincide with Washington State licensing approval of buyer for daycare business. Closing to be within 14 days of State and lender approval."

A month later, Traverso's conditional SBA loan approval expired. However, he at last completed his application with the Department for issuance of a day care license. Thereafter, the Department contacted Traverso stating that his license had been approved subject to the fire marshal's review of the property to ensure that it complied with the certificate of occupancy requirements to operate the day care.

In December, after the fire marshal's inspection, the Department informed

4

Traverso that the city's certificate of occupancy issued for the property did not allow for its use as a childcare center and that the Sellers had been operating their business as a legal nonconforming use. The Department told Traverso that the property needed various building modifications to comply with the current city of Kent building code. This needed to be done before the fire marshal could approve the location for issuance of a new certificate of occupancy.

The Sellers advised Traverso that they were not willing to make any modifications to the structures on their property and that they would not allow Traverso to come onto their property and make physical alterations to the structures thereon. On January 7, 2020, the Sellers proposed an addendum that provided:

> 1. Closing to be on or before 02/28/2020.
> 2. In the event buyer needs an extension past 02/28/2020, the earnest money shall be forfeited by buyer and released to sellers.
> 3. Sale is "as is" and buyer will pay for any updates or repairs required by city, state, and licensing department for buyer to obtain Day Care operator['s] license.

Traverso rejected the Sellers offer. On February 3, 2020, Traverso withdrew his application with the Department.

In March, the Sellers asked Traverso to sign an addendum committing to close the sale of the property no later than April 30, 2020, and to commit that if he did not close by that date, he would forfeit his earnest money. Traverso refused. Soon after, Traverso withdrew his newest SBA loan application.

On March 5, 2020, the Sellers sent a notice to Traverso entitled "Failure to Close—Notice of Termination by Seller—Seller to Keep Earnest Money." That

August, the Sellers relisted the property for sale at a price of $1,600,000.

On August 12, 2020, Traverso filed suit against the Sellers alleging breach of contract. Eventually, Traverso and the Sellers filed cross motions for summary judgment. The trial court granted the Sellers' summary judgment motion. The court ruled that Traverso's inability to obtain the day care license and financing constituted failures of the conditions precedent in the BOPSA. The court awarded the Sellers attorney fees and costs.

Traverso appeals.

II

Traverso first contends that there are genuine issues of material fact as to whether he satisfied the feasibility condition precedent in the BOPSA.

We review an order granting summary judgment de novo. Ebel v. Fairwood Park II Homeowners' Ass'n, 136 Wn. App. 787, 792, 150 P.3d 1163 (2007). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ebel, 136 Wn. App. at 792 (citing Tri-City Constr. Council, Inc. v. Westfall, 127 Wn. App. 669, 674, 112 P.3d 558 (2005)). We view the evidence in the "light most favorable to the nonmoving party." Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012) (citing Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011)). "The party opposing a motion for summary judgment may not rely on speculation, on argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value." Seiber v. Poulsbo Marine Ctr., Inc., 136 Wn. App. 731, 736, 150 P.3d 633 (2007) (citing

Seven Gables Corp. v. MGM/UA Ent. Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). "Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice." Seiber, 136 Wn. App. at 737 (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988)).

"'Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, [and] before the usual judicial remedies are available.'" Koller v. Flerchinger, 73 Wn.2d 857, 860, 441 P.2d 126 (1968) (internal quotation marks omitted) (quoting Ross v. Harding, 64 Wn.2d 231, 236, 391 P.2d 526 (1964)). "Whether a contract provision is a condition precedent or a contractual promise depends on the intent of the parties, to be determined from a fair and reasonable construction of the language used in light of all the surrounding circumstances." U.S. Bank Nat'l Ass'n v. Roosild, 17 Wn. App. 2d 589, 599, 487 P.3d 212 (2021) (citing Lokan & Assocs., Inc. v. Am. Beef Processing, LLC, 177 Wn. App. 490, 499, 311 P.3d 1285 (2013)), review denied, 198 Wn.2d 1026 (2021). But the language used by the parties can demonstrate their requisite intent. U.S. Bank Nat'l Ass'n, 17 Wn. App. 2d at 599. For example, "[t]he terms 'subject to' and 'contingent upon' likewise demonstrate an intent to form a condition precedent." U.S. Bank Nat'l Ass'n, 17 Wn. App. 2d at 599 (quoting Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 80, 96 P.3d 454 (2004)).

Here, an addendum to the BOPSA provided that the "[s]ale is *subject to* buyer obtaining all necessary licenses to run [the] business." (Emphasis added.)

7

The language "subject to" demonstrates Traverso's and the Sellers' intent to form a condition precedent. Under this addendum, Traverso's obligation to purchase, and the Sellers' obligation to sell, were conditioned upon whether Traverso obtained the day care license. In November 2019, Traverso submitted an application for a day care license to the Department. Soon thereafter, the Department told Traverso that the fire marshal had rejected the existing certificate of occupancy. The Department also told Traverso that until modifications were made to the building or the property, so that it was in compliance with the current city of Kent building code, the fire marshal would not approve issuance of a new certificate of occupancy. Months later, Traverso withdrew his day care license application with the Department. Therefore, Traverso fails to establish a genuine issue of material fact as to whether he satisfied the feasibility condition.

Traverso also contends that there are genuine issues of material fact as to whether he satisfied the financing condition precedent in the BOPSA. But Traverso applied to Celtic Bank for an SBA loan which required Traverso to obtain the day care license before the bank would underwrite his loan. As discussed, Traverso did not obtain the day care license. Therefore, Traverso fails to establish a genuine issue of material fact as to whether he satisfied the financing condition.

Accordingly, the trial court properly granted the Sellers' motion for summary judgment. Traverso's arguments in opposition are not convincing.

First, Traverso argues that there are genuine issues of material fact as to whether the Sellers gave Traverso a reasonable time to satisfy the conditions in accordance with the September 24 addendum.

"'[When] no time of performance [is] specifically agreed upon, a reasonable time for performance, under the circumstances, will be by the law presumed as intended by the parties to the contract.'" Brower Co. v. Garrison, 2 Wn. App. 424, 429, 468 P.2d 469 (1970) (alterations in original) (quoting Robinson v. Davis, 158 Wash. 556, 559, 291 P. 711 (1930)). "A reasonable time is to be determined by the nature of the contract, the positions of the parties, their intent, and the circumstances surrounding performance." Pepper & Tanner, Inc. v. Kedo, Inc., 13 Wn. App. 433, 435, 535 P.2d 857 (1975) (citing Smith v. Smith, 4 Wn. App. 608, 612, 484 P.2d 409 (1971)). "In some cases . . . the undisputed factual situation may be such that the court can say as a matter of law whether a certain thing was or was not done within a reasonable time." Jarstad v. Tacoma Outdoor Recreation, Inc., 10 Wn. App. 551, 558, 519 P.2d 278 (1974) (citing Baum v. Murray, 23 Wn.2d 890, 902, 162 P.2d 801 (1945)).

The September 24 addendum extended the closing period to occur "within 14 days of State and lender approval." A few days after Traverso signed the September 24 addendum, Thompson, Traverso's real estate broker, sent an e-mail to Carper, the Sellers' real estate broker, confirming that Traverso had "done everything asked by the state and lender" and he estimated that the purchase would be complete "by [the] end of [the] next month." But Traverso did not finalize his application with the Department until November 6, 2019, which

9

instituted a 90-day review process.[1]  Moreover, Traverso withdrew his application with the Department in February 2020, and withdrew his SBA loan application a month later.

The Sellers offered to give Traverso until April 30, 2020 to close the sale. But Traverso refused.  In March 2020, when the Sellers terminated the agreement, Traverso was no closer to closing than he was when he signed the BOPSA almost 11 months earlier.  Indeed, by March 2020 there was no reasonable foreseeable time period in which Traverso could close the transaction.  The BOPSA did not give him the right to enter onto the Sellers' property and physically alter the structures thereon.  And, without doing so, Traverso could not obtain an SBA loan—the only type of financing that he was willing to seek.  Therefore, considering all of the circumstances of this particular transaction, there are no genuine issues of material fact as to whether Traverso had been provided a reasonable time to obtain the SBA loan and satisfy the conditions of the BOPSA.  He had been.  And he did not.

---

[1] An applicant must submit the completed application packet at least ninety calendar days prior to the planned opening of the early learning program.  The department will inspect the early learning program space and approve all application submissions required in this chapter prior to issuing a license:

(a) The ninety calendar days begins when the department receives a complete application packet.

(b) Incomplete application packets will be returned to the applicant for completion.

(c) An applicant who is unable to successfully complete the application and licensing process within ninety days may withdraw the application and reapply when the applicant is able to meet the licensing requirements.  If the applicant has completed the steps of the application process within ninety days but an external barrier out of the applicant's control exists, the reapplication fee will be waived one time.

(d) An applicant who is unable to meet the application requirements and has not withdrawn his or her application will be denied a license, pursuant to RCW 43.216.325.

WAC 110-300-0400(3).

To the extent that Traverso argues that the September 24 addendum was unclear as to what constituted a reasonable time for him to obtain the SBA loan and satisfy the financing condition of the BOPSA, his argument fails. "A party seeking to rescind an agreement on the basis of mutual mistake must show by clear, cogent and convincing evidence that the mistake was independently made by both parties." Simonson v. Fendell, 101 Wn.2d 88, 91, 675 P.2d 1218 (1984) (citing Beaver v. Estate of Harris, 67 Wn.2d 621, 628, 409 P.2d 143 (1965)). But "[e]quity will grant rescission only where there is a clear bona fide mutual mistake regarding a material fact." Simonson, 101 Wn.2d at 92 (citing Ross v. Harding, 64 Wn.2d 231, 239, 391 P.2d 526 (1964)). A fact is material if, had the parties been aware of that fact, it would have effected their decision to enter into the contract. Simonson, 101 Wn.2d at 92. But here, the Sellers did not require Traverso to satisfy the financing condition by obtaining an SBA loan. Traverso could have obtained any type of loan to satisfy the financing condition. Because Traverso obtaining an SBA loan was not material to the Sellers' willingness to enter into the BOPSA, Traverso does not establish mutual mistake.

Similarly, Traverso cannot establish unilateral mistake as to the feasibility condition. "Unilateral mistake entitles a party to reform a contract only if the other party engaged in fraud or inequitable conduct." Associated Petrol. Prods., Inc. v. Nw. Cascade, Inc., 149 Wn. App. 429, 437, 203 P.3d 1077 (2009) (citing Gammel v. Diethelm, 59 Wn.2d 504, 507, 368 P.2d 718 (1962)). "A party acts inequitably if it knowingly conceals a material fact from the other party and has a duty to disclose that knowledge to the other party." Oliver v. Flow Int'l Corp., 137

11

Wn. App. 655, 664, 155 P.3d 140 (2006) (citing Wash. Mut. Sav. Bank v. Hedreen, 125 Wn.2d 521, 526, 886 P.2d 1121 (1994)). But here, Traverso's failure to contract for a provision that allowed him access to the property to make physical modifications to structures before closing was solely his mistake (if it was a mistake at all). The only access he contracted for was access to conduct inspections of the property. Specifically, the access provision of the BOPSA provided that "Buyer shall restore the Business and real property and improvements to the same condition they were in prior to inspection." Traverso's inability to recognize that he may need to access the property to conduct modifications was not the result of fraud or inequitable conduct by the Sellers. Traverso's unilateral mistake does not excuse performance.[2]

In a related argument, Traverso contends that there are genuine issues of material fact as to whether the Sellers breached the duty of good faith and fair dealing by refusing to allow him access to the property to make the physical structural modifications required by the city of Kent. He is wrong. "The duty of good faith and fair dealing does not impose a 'free-floating obligation' on the parties to a contract." 134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC, 15 Wn. App. 2d 549, 562, 479 P.3d 367 (2020) (quoting Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 113, 323 P.3d 1036 (2014)). "Instead, the duty

---

[2] Notably, in Traverso's complaint he claimed that the Sellers breached the BOPSA by failing to comply with the representations and warranties of section 18 of the agreement. Specifically, Traverso argued that the Sellers' representations and warranties obligated them to modify the property so that it was in compliance with the current city of Kent building code. But there was no provision in the BOPSA that required the Sellers to alter the property nor was there a provision in the BOPSA that allowed Traverso to access the property and make the required modifications before closing. And on summary judgment, Traverso conceded that the Sellers did not breach their representations and warranties. Traverso subsequently altered his argument, asserting that the Sellers breached the duty of good faith and fair dealing.

must arise 'in relation to performance of a specific contract term.'" 134th St. Lofts, LLC, 15 Wn. App. 2d at 562 (internal quotation marks omitted) (quoting Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004)). "This duty cannot add to or contradict a contract's express terms." 134th St. Lofts, LLC, 15 Wn. App. 2d at 562 (citing Rekhter, 180 Wn.2d at 113). As discussed, the BOPSA did not require the Sellers to allow Traverso access to the property to make structural modifications before closing. Furthermore, the integration clause of the BOPSA provided, "This agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Business. There are no verbal or other written agreements which modify or affect the Agreement." The Sellers did not breach a duty of good faith or fair dealing.

Finally, Traverso contends that because the feasibility and financing conditions precedent were for his benefit he should have been allowed to—and would have—waived them. Generally, "either party to a contract may waive any of the provisions made for his benefit." Reynolds Metals Co. v. Elec. Smith Constr. & Equip. Co., 4 Wn. App. 695, 700, 483 P.2d 880 (1971). Here, however, the record does not support Traverso's assertions. The Sellers offered Traverso an opportunity to waive the conditions and proceed to closing by purchasing the property and structures "as is." Traverso flatly refused this offer, leaving him with no path to closing the transaction in the foreseeable future. Sellers did not deprive him of any right he had to waive the conditions.[3]

---

[3] Because we affirm the trial court's grant of the Sellers' summary judgment motion, we need not address the trial court's denial of Traverso's summary judgment motion.

III

Traverso next argues that the trial court erred by awarding attorney fees to the Sellers. The BOPSA provides attorney fees to the prevailing party in the litigation. Because the Sellers prevailed before the trial court, that court did not err by awarding attorney fees. And because the Sellers prevail on appeal, they are entitled to an award of attorney fees on appeal, subject to compliance with RAP 18.1(d). Upon such compliance, a commissioner of our court will enter an appropriate award.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Birk, J._                _Coburn, J._